THE FIDELITY BANK OF DURHAM, TRUSTEE, v. I. F. BLOOMFIELD AND PEOPLES FRUIT AND PRODUCE MARKET, INC.

(Filed 28 June, 1957.)

**1. Landlord and Tenant § 15—**

A lessee signing a lease expressly covenanting to pay rent is not relieved of his obligation to do so by assignment of the lease in accordance with its terms, even though lessor agrees to the assignment, unless the lease by express terms absolves lessee of his obligation to pay rent upon assignment or the lessor expressly agrees to accept the assignee in substitution of the original lessee, and mere agreement by lessor to the assignment and acceptance of rent from the assignee do not amount to such agreement.

**2. Trial § 36—**

Exception to the issues will not be sustained when the issues submitted are sufficient to present to the jury all determinative facts in dispute and to enable the parties to present every phase of the controversy.

**3. Appeal and Error § 45—**

Where the answer of the jury to one of the issues submitted determines the rights of the parties, unrelated error in the submission of or relating to subsequent issues cannot be prejudicial.

**4. Corporations § 4—**

Evidence to the effect that the asserted corporation had less than three directors, G.S. 55-48, that no capital stock was issued, that its only assets were the business assets of the incorporator, and that the incorporation was a mere bookkeeping transaction transferring the business of the incorporator to the corporation, is sufficient to support a finding by the jury that the incorporator was sole beneficial owner and in sole control of its affairs.

**5. Damages § 6—**

The burden is upon lessee who has wrongfully breached his lease by failure to pay rent to show that lessor in the exercise of good business judgment could have leased to another and minimized his loss.

APPEAL by defendant I. F. Bloomfield from *Sink, E. J.*, January Civil Term 1957 of DURHAM.

Civil action to recover rent.

Mrs. Lee L. Lloyd, a widow, owns a store building on the Main Street of Durham. She is now a woman 95 to 97 years of age, feeble in body and mind, and is in a nursing home. I. F. Bloomfield leased the main floor and basement of this property from Mrs. Lloyd in 1930, and from that time until in March 1954 operated a fruit and produce market there. During that period he had several lease agreements with Mrs. Lloyd.

On 12 September 1951 Mrs. Lloyd and I. F. Bloomfield entered into a lease agreement in writing, whereby Bloomfield continued to rent this property from Mrs. Lloyd for a term commencing 1 September 1951 and expiring 31 August 1957 at a rent payable in advance on the first day of each month: the rent to be paid the first year was $75.00 a week, and was to increase $2.50 a week for each of the next five years of the lease. The lease contained the following provision: "The following lease is not transferable except that it is expressly agreed that in the event Mr. I. F. Bloomfield incorporates his business, which he has been conducting as an individual proprietorship, this lease can be transferred without my consent to said corporation. It is further expressly stipulated that any other transfer or assignment of this lease cannot be made without the express approval of myself, my heirs or assigns." This lease was executed by the parties, and is recorded in the Durham County Registry. The lease introduced in evidence at the bottom has these words: "This Lease is assigned and transferred to the Peoples Fruit and Pr. Co. This 1st day of Oct., 1953. I. F. Bloomfield (SEAL)."

On 14 January 1953 Mrs. Lloyd and Bloomfield entered into another lease agreement for this property for a term beginning on 1 September 1957 and ending on 31 August 1962. This lease at the bottom has this language: "I have read the above conditions and terms of the above lease agreement and hereby agree to same. /s/ I. F. Bloomfield. (SEAL)." This lease contains a provision for the transfer or assignment of the lease in the same words as the lease of 12 September 1951. Bloomfield got this 1953 lease, because someone was "trying to rent it out from under him."

On 10 February 1954 Mrs. Lloyd executed and delivered to plaintiff bank an irrevocable trust agreement, by which the bank as trustee was to have management and control of her property, to collect her rents, etc. Simultaneously with the execution of the trust agreement, Mrs. Lloyd executed and delivered to the bank a deed conveying to it as trustee this store property.

The rent was paid up to 6 April 1954. About that time the business operated in this store ceased, as "finances were getting mighty low." No rent has been paid since that time.

There is abundant evidence tending to show that the bank, and an agent of Bloomfield, tried to obtain another tenant for this property, but another permanent tenant was not obtained until 1 October 1955.

Each defendant filed separate answers to the complaint, and to the complaint as amended. The defendant Bloomfield filed answer to the complaint in which he alleged in substance that he had incorporated his business as Peoples Fruit and Produce Market, Inc., which corporation began business on 1 October 1953, that on that day he assigned and transferred the lease to the corporation, that the purpose of incorporating his business was to assign the lease to the corporation and to relieve him of any personal liability for rent, that the provision as to a transfer of the lease was inserted in the lease agreement with the understanding that if he incorporated his business, the lease would be transferred to it so as to relieve him from individual liability for rent, and that he is not indebted for any rent. The corporate defendant filed answer to the complaint in which it admits that the lease was transferred to it on 1 October 1953, that it paid the rent to 6 April 1954, and that it owes rent since that time.

The complaint asked for the recovery of rent from 6 April 1954 to the institution of the action. The Court, in its discretion, permitted an amendment to the complaint so that recovery of rent could be requested from the institution of the action. The corporate defendant filed answer to the amendment to the complaint admitting that it is indebted for rent from 6 April 1954 to the time of institution of the action, but denying that it is indebted for rent since, by reason of failure of plaintiff to minimize its loss by renting the property. The defendant Bloomfield in his answer to the amendment to the complaint denies that he is liable for any rent for the reasons set forth in his original answer, but if it should be determined that he is liable, then he is not liable for any rent after the time of the commencement of the action for the same reason alleged by the corporate defendant.

Plaintiff filed a reply to the original answer of the defendant Bloomfield in which it alleged in substance that, if the transfer or assignment provision in the lease of 12 September 1951 should be construed to have the effect of relieving the defendant Bloomfield of his personal obligation to pay rent, then the consent of Mrs. Lloyd thereto was procured by the fraud of Bloomfield, that Peoples Fruit and Produce Market, Inc., was incorporated 30 April 1951, that Bloomfield was its sole beneficial owner, and that the corporation was merely a dummy corporation and *alter ego* of Bloomfield.

These facts appear in Bloomfield's answer, or in his testimony in this trial, or in a former trial of the case, or in the testimony of his witnesses: The business was his up to the time he incorporated it. He operated under the trade name of Peoples Fruit and Produce Market.

He incorporated the business on 30 April 1951, and on 1 October 1953 the corporation began business. On that date he transferred to it his lease. The purpose of incorporation was to relieve him of liability for paying rent under the lease of 12 September 1951. This is the Balance Sheet of the corporate defendant on 30 September 1953:

## "BALANCE SHEET

### PEOPLES FRUIT AND PRODUCE COMPANY
September 30, 1953

#### ASSETS

CURRENT ASSETS

| | | |
|---|---:|---:|
| Accounts receivable | $ 5,644.84 | |
| Due from I. F. Bloomfield | 3,820.55 | |
| Inventory | 8,672.53 | |
| TOTAL CURRENT ASSETS | | $18,137.92 |

PROPERTIES AND EQUIPMENT

| | | |
|---|---:|---:|
| Furniture and fixtures | $ 5,424.78 | |
| Automobiles and trucks | 2,624.36 | |
| Leasehold improvements | 7,459.99 | |
| | $15,509.13 | |
| Less: Accumulated depreciation | 12,392.48 | |

| | |
|---|---:|
| TOTAL PROPERTIES AND EQUIPMENT—NET | 3,116.65 |
| ORGANIZATION EXPENSE | 100.30 |
| TOTAL | $21,354.87 |

### LIABILITIES AND PROPRIETOR'S EQUITY

CURRENT LIABILITIES

| | | |
|---|---:|---:|
| Bank overdraft | $ 280.48 | |
| Accounts Payable | 6,556.65 | |
| Notes Payable—equipment (due within one year) | 600.00 | |
| Notes Payable—borrowed money (due within one year) | 6,755.11 | |
| Social Security tax payable | 57.79 | |
| Withholding tax payable | 125.90 | |
| North Carolina unemployment tax payable | 4.27 | |
| Other taxes payable | 212.64 | |
| TOTAL CURRENT LIABILITIES | | $14,592.84 |

LONG TERM INDEBTEDNESS
    Notes payable—equipment
        (due after one year)..........................$    370.00
    Notes payable—borrowed money
        (due after one year).......................... 6,092.03

        TOTAL LONG TERM INDEBTEDNESS............... 6,462.03
PROPRIETOR'S EQUITY
    I. F. Bloomfield—capital................. ..................... 300.00

        TOTAL............. ....................................... . ..... $21,354.87"

Bloomfield and his wife were the officers of the corporation. At his former trial he was asked who were the directors. He replied "myself." He was then asked "who else"? He answered "No one." He was then asked "just you"? He replied "Yes Sir." At the trial of the present case Bloomfield testified: "I might have testified at the trial of this thing in January 1956 that I was the only director of the corporation. I don't know whether I did or didn't. So far as I know, me and my wife were the only directors; I really don't know. I don't think Mr. Meyer was. I don't know whether they in fact had any directors. . . . I was still the owner of the business through the owner of the corporation." He also testified his wife, Sigmund Meyer and himself were officers and directors of the corporation.

The defendants introduced in evidence twenty typewritten pages of what purported to be the minutes of the first meeting of the incorporators of the corporation, of the first meeting of the directors, and a copy of the corporate charter: all unsigned except by Meyer. These pages are not in the Record, but are summarized in 17 lines, except for ¾ of a page of By-Laws. Bloomfield testified: "I did not hold stockholders meetings to elect directors every year. I don't know whether I held one in 1952. I believe we did hold one in 1953. At that meeting, in 1953, they elected myself and my wife directors; just the two of us. I don't recall whether we held a meeting in 1954. . . . The corporation was more or less inactive."

The only assets put into the corporation were the assets of Bloomfield individually. Bruce Umstead, a certified public accountant, employed by Bloomfield and his witness testified, "the action involving any transfer of the business from Mr. Bloomfield to the corporation was simply a bookkeeping transaction."

After the Fidelity Bank became trustee, Bloomfield paid the rent to it by cheques. He testified: "I signed every one of them. The word 'corporation' or 'incorporated' does not appear on a single one of them."

He also testified after the lease was transferred to the corporate defendant, it paid the rent.

Bloomfield employed Allenton Real Estate Company to undertake to lease the property. It procured a temporary tenant, and collected rent in 1954 and 1955 of over $200.00. None of this was paid to plaintiff or Mrs. Lloyd.

Bloomfield testified: "On or about the first day of October, 1953, I had a conversation with Mrs. Lloyd. We talked about transferring the lease from Peoples Fruit and Produce Market to the Peoples Fruit and Produce Company, Inc. I advised her it had been done and explained it to her. She said it was all right."

Mrs. Lloyd was not a witness, and it does not appear that she was in the courtroom during the trial.

Eight issues were submitted to the jury. It was stipulated by the parties that the Trial Judge should answer the first three issues Yes. The first issue with the answer Yes was to the effect that Bloomfield leased the property from Mrs. Lloyd for the period described in the lease dated 12 September 1951 and at the rental therein set forth. The second issue with the answer Yes was that Bloomfield transferred this lease in accordance with its terms and provisions. The third issue with its answer was that Mrs. Lloyd executed and delivered to the bank the trust agreement of 10 February 1954. The remaining issues with the answers of the jury thereto are as follows:

"4. Was there default in the payment of the rent provided by said lease of September 12, 1951, for the week commencing April 6, 1954, and for all weeks thereafter up to October 1, 1955? Answer: Yes.

"5. Was the consent of Mrs. Lee L. Lloyd to the provision of said lease of September 12, 1951, permitting transfer of said lease to a corporation, procured by fraud and deception of said I. F. Bloomfield upon said Mrs. Lee L. Lloyd? Answer: No.

"6. Was the defendant I. F. Bloomfield the sole beneficial owner of the defendant Peoples Fruit and Produce Market, Inc., and in sole control of its affairs? Answer: Yes.

"7. What damages, if any, is plaintiff Mrs. Lee L. Lloyd entitled to recover of the defendant I. F. Bloomfield for non-payment of rent provided by said lease of September 12, 1951, from April 6, 1954, to October 1, 1955? Answer: $6,257.

"8. What damages, if any, is plaintiff Mrs. Lee L. Lloyd entitled to recover of defendant Peoples Fruit & Produce Market, Inc., for

non-payment of rent provided by said lease of September 12, 1951, from October 12, 1954, to October 1, 1955? Answer: None."

From judgment entered upon the verdict, the defendant Bloomfield appeals.

*E. C. Brooks, Jr., and E. K. Powe for Defendant, Appellant.*
*Reade, Fuller, Newsom & Graham for Plaintiff, Appellee.*

PARKER, J. The defendant Bloomfield assigns as error the failure of the court to allow his motion for judgment of nonsuit made at the close of all the evidence. G.S. 1-183. Bloomfield's contention is that having transferred the lease of 12 September 1951 to the "Peoples Fruit and Pr. Co." on 1 October 1953, he was from that time relieved from any personal obligation to pay rent.

In Annotation 36 A.L.R. 316, this is written: "It is established by an unbroken line of authority that where a lease containing an express covenant to pay rent has been assigned, the fact that the lessor thereafter accepts rent from the assignee does not release the lessee from his liability for rent during the remainder of the term, the assignment terminating the privity of estate between the lessor and the lessee, but not the privity of contract." Numerous cases are cited in support of the statement from 26 states of this nation and from England.

This Court said in *Pate v. Oliver*, 104 N.C. 458, 10 S.E. 709: "There can be no question but that a lessee, under an express contract, cannot discharge himself by his own act. 'Hence, as long as the lease continues, and as far as he has assets an executor is held liable in debt as well as in covenant for accruing rent, and the assignment of the term by himself or his decedent affords of itself no immunity.' Schouler's Ex. & Admrs. 376."

In *Alexander v. Harkins*, 120 N.C. 452, 27 S.E. 120, the plaintiff contended the whole term of Keller in the lease of a storehouse was purchased, and this made the purchasers tenants of the plaintiff. This Court said: "While it constituted the purchasers tenants, with the rights of the original lessees, as to the terms of the lease and estate granted, it did not release the original lessee from the obligation of his contract to pay the rent."

The assignment of a lease does not annul the lessee's obligation on his express covenant to pay rent, even though the lessor has consented to such assignment and collected rent, unless the lessor has made an agreement by which a new tenancy is created and the old ended or unless the lessor has accepted the surrender of the lease or released the lessee on a sufficient consideration. 52 C.J.S., Landlord and Tenant, sec. 528a(1); 32 Am. Jur., Landlord and Tenant, sec. 358.

In *Hamlen v. Rednalloh Co.*, 291 Mass. 119, 197 N.E. 149, 99 A.L.R. 1230, the Court said: "The mere assignment of a lease with the consent of the lessor who takes a covenant from the assignee to pay rent or thereafter collects rent from the assignee does not relieve the original lessee from his contract to pay rent expressed in the covenants of the lease."

In *S. S. Kresge Co. v. Sears*, 87 F. 2d 135, 110 A.L.R. 583, *certiorari* denied 300 U.S. 670, 81 L. Ed. 876, the Court said: "It appears from the cases cited above that the mere assignment of a lease, even with the consent of the lessor, does not relieve the original lessee from liability under his express covenants. To absolve the original lessee from liability in case of an assignment, it must appear in fact that the lessor has contracted that the lessee shall not be further liable."

"*The fact that the assignee is also liable for rent,* through privity of estate or express agreement to assume the obligations of the lease, will not discharge the lessee. Unless the lessor has accepted the assignee as a substitute in place of the original lessee, the lessor may, at his election, pursue either or both for payment, although he may have but one satisfaction." 52 C.J.S., Landlord and Tenant, p. 330.

Bloomfield signed the Lease Agreement of 12 September 1951, and to his signature added his seal. Above his signature and seal appears these words: "I have read the above conditions and terms of the above lease agreement and hereby agree to same." Included in which terms was a specified rent schedule payable monthly in advance. Bloomfield by express contract under his seal in plain and unambiguous words covenanted to pay the rent specified in the Lease Agreement, and individually paid the rent specified to 1 October 1953 according to his own testimony.

The Lease Agreement in plain language provided that if Bloomfield incorporated his business, the lease could be transferred to the corporation without the lessor's consent. Doubtless it is competent for a lessor to incorporate in a lease agreement a provision that the lessee can transfer the lease, that the assignee will be accepted as sole tenant and the lessee will be absolved from his contract to pay rent, but no such provision appears in the Lease Agreement of 12 September 1951, and such a meaning cannot be read into its clear and plain words. The fact that Bloomfield on or about 1 October 1953 told Mrs. Lloyd that he had transferred the lease to Peoples Fruit and Produce Company, Inc., and that she said it was all right does not even tend to show that Mrs. Lloyd agreed to release Bloomfield from his express covenant contained in his lease of 12 September 1951 to pay rent and to substitute the corporation in his place.

The trial court properly overruled the defendant Bloomfield's motion for judgment of nonsuit.

The defendant assigns as error the submission of Issues 4, 5, 6, 7 and 8 to the jury, and its failure to submit issues tendered by him. Defendant contends that the court by consent having answered the second issue, "Did the defendant I. F. Bloomfield assign and transfer said lease dated September 12, 1951 in accordance with the terms and provisions of said lease," Yes, it was error to submit Issues 4, 5, 6, 7 and 8. There is no merit to that contention for the mere assignment of the lease did not relieve defendant Bloomfield from his express covenant contained in his contract to pay rent.

The issues submitted were sufficient to present to the jury the determinative facts in dispute for decision, and to enable the parties to present every phase of the controversy. When such is the case, this Court has repeatedly held the parties have no ground to complain. *Gallimore v. Grubb,* 156 N.C. 575, 72 S.E. 628; *Cherry v. Andrews,* 231 N.C. 261, 56 S.E. 2d 703; *McGowan v. Beach,* 242 N.C. 73, 86 S.E. 2d 763.

Conceding that the submission of the fraud issue, Issue 5, was error, because of lack of evidence, such error is not sufficiently prejudicial to justify a new trial.

Upon the facts in the Record the defendant Bloomfield was bound by his express covenant contained in his lease of 12 September 1951 to pay rent, and it was not necessary to submit the 6th Issue to the jury in order to hold him liable on the principle set forth in *Terrace, Inc., v. Indemnity Co.,* 243 N.C. 595, 91 S.E. 2d 584, of a one-man owned and dominated corporation. However, when the defendant Bloomfield's evidence shows that the only assets put into the corporate defendant were his alone, that the balance sheet statement of the corporate defendant of 1 October 1953 states "Proprietor's Equity, I. F. Bloomfield —capital $300.00," thus indicating no capital stock was issued, that no stockholders' meetings were held in 1952 and 1954, and that at the stockholders' meeting in 1953 only two directors were elected, that his certified public accountant and witness Bruce Umstead testified "the action involving any transfer of the business from Mr. Bloomfield to the corporation was simply a bookkeeping transaction," we are of opinion there was plenary evidence to support the jury's answer to the 6th Issue. A corporation must have at least three directors to manage its affairs. G.S. 55-48. The defendant Bloomfield testified the "corporation was more or less inactive." And it is significant when the defendant Bloomfield signed the lease agreement of 14 January 1953 for a term beginning 1 September 1957 and ending 31 August 1962, the lease was to him as an individual, and contained an express covenant for him personally to pay the rent, and this lease had a provision that "it is expressly agreed that in the event Mr. I. F. Bloomfield incorporates his business, which he has been conducting as an individual proprietorship,

the lease can be transferred without my consent to said corporation."
Defendant Bloomfield incorporated his business on 30 April 1951.

We have examined the assignments of error to the charge, and error
sufficiently prejudicial to justify setting aside the verdict and judgment
and ordering a new trial is not shown. In parts the charge was more
favorable to the defendants than they were entitled to. For instance,
the court charged the jury that Mrs. Lloyd, or the bank after it took
over her estate, had the legal duty to show that she, or it, had exercised
due diligence to rent the property and minimize defendants' loss. The
lease having been wrongfully breached by nonpayment of rent the
burden was on the defendants who breached the contract to show that
in the exercise of good business judgment the lessor could have leased
to another and minimized the loss. *Monger v. Lutterloh,* 195 N.C. 274,
142 S.E. 12; *Produce Co. v. Currin,* 243 N.C. 131, 90 S.E. 2d 228.

It would seem the jury answered the last issue None, because they
looked upon Peoples Fruit and Produce Company, Inc., as an *alter ego*
of the defendant Bloomfield, and considered it insolvent.

The verdict and judgment below will not be disturbed.

No error.