ROBERT STEWART KEELS AND WIFE, DOROTHY NEWBER KEELS v. W. E. TURNER AND HOMESTEAD BUILDERS OF WILMINGTON, INC.

No. 795DC411

(Filed 19 February 1980)

1. **Corporations § 25 — contract to build house — corporate veil pierced — defendant individually liable**

    In an action to recover for breach of contract to construct a house on a tract of real estate and then convey the house and lot to plaintiffs, the trial court erred in directing a verdict for the individual defendant and could have "pierced the corporate veil" and held defendant personally responsible on the instrument in question where the evidence tended to show that the contract of sale used the name "Homestead Builders" as did the bank account of the purported corporation, and the corporate name thus did not comply with G.S. 55-12(a); either there was no meeting for the issuance of stock and no stock was ever issued or other corporate formalities were never observed; the in-

dividual defendant ran the business as his own personal business; and at the time the contract of sale was signed, the purported corporation did not own the lot which it agreed to convey, but the land was owned by individual defendant and another person.

**2. Corporations § 8— contract signed by officer in individual capacity**

The individual defendant was responsible in his individual capacity for any liability resulting from a contract to sell real property to plaintiffs since defendant signed the contract once as "W. E. Turner, Seller" and once as "Homestead Builders by W. E. Turner."

**3. Contracts § 26— breach of contract—operating corporation as personal business—similar evidence already admitted**

In an action to recover for breach of contract to construct and convey a house to plaintiffs, the trial court did not err in permitting an officer of defendant corporation to testify that the individual defendant "ran the business as his own personal business," since there were facts already in evidence from which the trier of facts could conclude that the corporate defendant was something less than a legitimate N. C. corporation and since the witness, as an officer of the corporation, was well qualified to state the facts about the relationship between individual defendant and corporate defendant.

**4. Contracts § 26.2— evidence of other contracts by defendant—best evidence rule violated—evidence not prejudicial**

Testimony by the officer of defendant corporation that individual defendant had signed other contracts in his individual capacity, though it violated the best evidence rule and constituted hearsay, was not prejudicial to defendant since individual defendant was liable anyway based upon his individual signature and his failure to observe other corporate formalities.

**5. Contracts § 27.3— breach of contract to build house—cost of materials—damages**

In an action to recover for breach of contract to construct a house for plaintiffs, the trial court did not err in failing to strike certain elements of damages, and evidence was sufficient to show that the damages were the natural and proximate result of the alleged breach where the evidence tended to show that plaintiff was an employee of Lowe's which entitled plaintiff to a one-time purchase of home building materials at cost; plaintiff explained to defendant that such purchase of supplies was a one-time employee benefit; and the jury could properly conclude that the cost of building materials and the loss of the one-time right to a discount on building materials were foreseeable consequences of the breach.

**6. Witnesses § 6.2— defendant's reputation—similar evidence elicited by defense counsel—no prejudice**

Even if the trial court in a breach of contract action erred in allowing plaintiffs to reopen their case and present testimony concerning individual defendant's reputation in the community, defendant was not prejudiced, since defense counsel, on cross-examination of the character witness, elicited more testimony including specific acts, concerning defendant's bad character.

APPEAL by plaintiffs and defendant Homestead Builders from *Barefoot, Judge.* Judgment entered 11 December 1978 in District Court, PENDER County. Heard in the Court of Appeals 5 December 1979.

This is an action brought by the plaintiffs against the defendants for specific performance of a contract to convey realty, and for damages. The plaintiffs alleged that the defendants agreed to construct a house on a tract of real estate, and then convey the house and lot to the plaintiffs; that the defendants breached the contract; and that the plaintiffs were entitled to specific performance and damages. Subsequent to the filing of the complaint, the house and lot were foreclosed and sold to a third party. Thereafter, the plaintiffs amended their complaint, alleged the foreclosure and sought additional damages. The defendants, in their answer, admitted that the corporate defendant had contracted with the plaintiffs, but denied that the individual defendant had contracted with plaintiffs. Both defendants denied the plaintiffs' allegations of breach of contract and damages, and the corporate defendant counter-claimed for damages for breach of contract by the plaintiffs. The plaintiffs replied and denied the defendants' allegations that the plaintiffs had breached the contract.

At the close of the plaintiffs' evidence, the defendant W. E. Turner moved pursuant to Rule 50 of the Rules of Civil Procedure for a directed verdict as to him, which the Court denied. After the defendants had offered evidence, and the plaintiffs had introduced two exhibits in evidence in rebuttal, the defendant W. E. Turner renewed his motion under Rule 50 for a directed verdict as to him, which motion was allowed by the Court. The plaintiffs excepted to the ruling of the Court. Issues were submitted to the jury as to the rights and duties of the plaintiffs and the defendant Homestead Builders of Wilmington, Inc., which the jury answered in favor of the plaintiffs. Upon the entering of judgment, the plaintiffs gave notice of appeal to the Court of Appeals. Subsequently, the defendant Homestead Builders of Wilmington, Inc. served notice of appeal. Other necessary facts are stated in the opinion.

*Stevens, McGhee, Morgan & Lennon by Richard M. Morgan for plaintiff appellants-appellees.*

*Burney, Burney, Barefoot & Bain by Roy C. Bain for defendant appellant-appellee.*

CLARK, Judge.

### I. PLAINTIFFS' APPEAL

The plaintiffs argue that the trial court erred in granting the motion of the defendant W. E. Turner under Rule 50 of the Rules of Civil Procedure for a directed verdict. We agree for the two reasons set forth below.

A. *Piercing the Corporate Veil.*

[1] The evidence clearly indicates that defendant Turner failed to follow the formalities of the corporate organization; consequently, we are able to "pierce the corporate veil" and hold the defendant personally responsible on the instrument. *Fidelity Bank v. Bloomfield,* 246 N.C. 492, 98 S.E. 2d 865 (1957). *See generally,* R. Robinson, N.C. Corporation Law and Practice § 9-9 (2d ed. 1974).

First, N.C. Gen. Stat. § 55-12(a) provides that "[t]he corporate name shall contain the wording 'corporation,' 'incorporated,' 'limited' or 'company' or an abbreviation of one of such words." *See State v. Thornton,* 251 N.C. 658, 111 S.E. 2d 901 (1960) ("The Chuck Wagon" not a corporate entity); *Goard v. Branscom,* 15 N.C. App. 34, 189 S.E. 2d 667, *cert. denied* 281 N.C. 756, 191 S.E. 2d 354 (1972) ("White Plains Baptist Church" not a corporate entity); *State v. Thompson,* 6 N.C. App. 64, 169 S.E. 2d 241 (1969) ("Belks Department Store" not a corporate entity); *State v. Biller,* 252 N.C. 783, 114 S.E. 2d 659 (1960) ("U-Wash It, in Chapel Hill" not a legal entity). In the instant case, however, the contract of sale used only "Homestead Builders." Similarly, the bank account of the purported corporation was opened in the name of "Homestead Builders" some three months prior to the date at which the corporation was incorporated. Also, the name of the bank account did not change after the incorporation.

Second, N.C. Gen. Stat. § 55-9 provides that "[a] corporation shall not transact any business . . . until there has been received

the amount stated in the articles of incorporation as being the minimum amount of consideration to be received for its shares before commencing business." However, the minutes of the Official Meeting of the Initial Board of Directors of Homestead Builders of Wilmington, Inc., dated 21 May 1976 — four days after the subject contract of sale was signed, indicated that the purpose of the meeting was, *inter alia,* "to issue stock or take subscriptions for stock of Homestead Builders of Wilmington, Inc." Mr. E. H. Kennedy, vice president and one of two directors of the corporation, testified that "no stock ha[d] ever been issued" and that he "never went to any corporate meetings to organize the corporation, or issue stock, or anything like that." Moreover, the secretary of the corporation, Carolyn M. Kennedy, who was also the wife of E. H. Kennedy, did not sign the purported minutes. The only signature on the purported minutes was that of the defendant W. E. Turner. One may only conclude that either the meeting did not occur and no stock was ever issued, or that other corporate formalities were never observed. *See also,* N.C. Gen. Stat. § 55-11, and § 55-32(g) and (l).

Third, E. H. Kennedy testified that defendant Turner "ran the business as his own personal business" and that Turner had signed another contract with Turner's personal signature instead of Homestead Builder's signature.

Fourth, at the time the contract of sale in this case was signed, Homestead Builders did not own the lot which Homestead Builders agreed to convey. The land was owned jointly by defendant Turner and E. H. Kennedy individually. While there is no rule that one may not contract to sell something which one does not yet own (were it so, the commodities futures markets would not exist), this consideration is relevant in the instant case with respect to whether defendant Turner was operating in an individual or corporate capacity.

B. *Signature in Individual Capacity.*

[2] "In general, it may be said that one who places his unqualified signature on an instrument as maker or indorser will not be able to escape liability as such by a mere assertion that he intended to sign only as the representative of a corporation of which he is an officer or director." Annot., 82 A.L.R. 2d 424, 426 (1962). *See also,* N.C. Gen. Stat. § 25-3-403 (1965). These

authorities pertain to negotiable instruments but we can see no reason for treating other contracts differently. Similarly, "where individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual." 19 Am. Jur. 2d *Corporations* § 1343 (1965). In the instant case defendant Turner signed the contract of sale once as "W. E. Turner, Seller" and once as "Homestead Builders by W. E. Turner." By application of the above stated rules, we hold defendant Turner responsible in his individual capacity for any liability resulting from the contract to sell the subject property to the plaintiffs.

II. DEFENDANT'S APPEAL

[3] Defendant's first series of objections pertains to the following question submitted to Harold Kennedy:

> "Q. Did Mr. Turner do business as a corporation and treat you as a stockholder in the corporation, or did he run the business as if it was [*sic*] his own?
>
> MR. BAIN: Objection
>
> COURT: Overruled.
>
> A. He ran the business as his own personal business."

Defendant argues that there was nothing in the record at the point when the question was asked from which the trier of fact could infer or conclude that the corporate defendant was anything less than a legitimate North Carolina corporation, and that consequently the question assumes facts not in evidence or facts in dispute in the case. 1 Stansbury, N.C. Evidence § 31 (Brandis rev. 1973). We disagree. Mr. Kennedy at this point had already testified at two different times, to the effect that although he was an officer in the corporation and was supposed to be a stockholder, nonetheless, he had never subscribed to stock in the corporation, no stock had ever been issued to him, and, in fact, no stock had been issued to anyone at all. Contrary to that asserted by the defendant, there were certainly facts from which a trier of fact could conclude that the corporate defendant was something less than a legitimate North Carolina corporation. In addition, we agree with the assertion of defendant Turner that Kennedy as an officer of the corporation was well qualified to state the facts

about the relationship between defendant Turner and the corporate defendant.

The defendant further argues, however, that the question was leading and that the question calls for an opinion from the witness. These arguments may have more merit, but even if the question were leading and calling for an opinion, it was not sufficiently prejudicial to affect the outcome in light of the other factors, discussed above, which allow defendant's corporate veil to be pierced. 1 Strong's N.C. Index 3d *Appeal and Error* § 48 (1976).

[4] The defendant's next assignment of error pertains to the following question submitted to Mr. Kennedy.

> "Q. Do you know of any other contracts that he signed just W. E. Turner instead of Homestead Builders?
>
> MR. BAIN: Objection.
>
> COURT: Overruled, if he knows.
>
> A. I think there was one other contract.
>
> MR. BAIN: Objection.
>
> COURT: Sustained.
>
> Q. If you know or do not know, that's the question you have to answer, Mr. Kennedy.
>
> A. There was a contract with Cardinal Realty."

Defendant contends that the evidence elicited was in violation of the best evidence rule and constituted hearsay. We agree. 1, 2 Stansbury's N.C. Evidence §§ 138, 191 (Brandis rev. 1973). Nonetheless, this statement is not prejudicial, for we have already held defendant Turner liable based upon his individual signature in the instant case, as well as upon his failure to observe other corporate formalities. It is fundamental that no reversal or new trial will be awarded where there is no prejudicial error. 1 Strong's N.C. Index 3d *Appeal and Error* § 49 (1976).

[5] The defendants also assign as error the failure of the trial court to strike certain elements of damages at the close of the plaintiffs' evidence and at the close of all the evidence. In this

regard the defendant asserts that there was no evidence in the record to support the plaintiffs' claim for damages. We do not agree. It is not for this Court to second-guess the means by which the jury calculated the award of damages. We can only note that there was sufficient evidence in the record to support the jury's verdict of $21,570.79 as the amount of damages the plaintiffs were entitled to recover. The testimony of Robert Keels, the canceled checks, and the Lowe's account credits indicate that the plaintiffs paid $16,933.34 to Lowe's for building supplies. Robert Keels' undisputed testimony also indicated that as a Lowe's employee he was entitled to a one-time purchase of home building materials at cost, and that on the average this amounted to a 25% discount. Even assuming a discount of 25% of $16,933.34, as opposed to the pre-discount sum, plaintiff's discount would have amounted to $4,233.33. Robert Keels' testimony, plus the canceled checks, indicated that $204.11 and $200.00 had been paid for paint and carpet installation, respectively. These amounts total to the exact amount of the jury verdict.

Defendant next contends that there is insufficient evidence to show that the damages were the natural and proximate result of the alleged breach. We find no merit in this argument. There is sufficient testimony by Robert Keels, E. H. Kennedy, and defendant Turner from which a jury could conclude that the materials were to be purchased at a discount on the Lowe's employee account of Robert Keels and that Homestead Builders was to pay Lowe's for the materials out of the contract price for the house. In addition, there is some testimony by Robert Keels from which the jury could conclude that Robert Keels explained to defendant Turner that this was a one-time employee benefit as long as Robert Keels worked at that Lowe's store. It is without dispute that damages for a breach of contract may only be recovered for those "which may reasonably be supposed to have been in the contemplation of the parties at the time they contracted." *Stanback v. Stanback*, 297 N.C. 181, 186, 254 S.E. 2d 611, 616 (1979). Nonetheless, there is sufficient evidence in the instant case from which the jury could conclude that the cost of the building materials and the loss of the one-time right to a discount on building materials were foreseeable consequences of the breach. The trial court instructed the jury on the foreseeability requirement and the decision of the jury on this question is final.

[6]   The defendants' final assignment of error challenges the action of the trial court in allowing the plaintiffs to reopen their case and present the testimony of Donald Christian. Christian testified on direct examination that Mr. Turner's reputation in the community was bad. On cross-examination by defendants' attorney, Christian stated that at one time he thought Mr. Turner's reputation in the community was "unreproachable," but that he had "found out very differently since." Christian further explained that he used to own a grocery business which was failing, that he and Turner agreed that Christian would give Turner 50% of the stock and Turner would put $50,000 in the business. Christian then stated that he assigned the stock to Turner but Turner only put $10,000 in the business before it failed.

The defendants concede that the trial judge has discretion to allow a plaintiff to reopen after the close of all the evidence, but they argue that the testimony of Christian was evidence of bad character which was inadmissible as against a party, citing *Godwin v. Tew*, 38 N.C. App. 686, 248 S.E. 2d 771 (1978). In *Godwin*, the evidence of character did pertain to the character of a party who had been a witness. The proffered testimony was that one of the parties had shot his wife. This Court held that the testimony was irrelevant and prejudicial under the facts of that case. We do not think that *Godwin* meant that the rule against admitting evidence of character of a party always applies to a party who testifies as a witness. On the contrary, it is a long-standing rule of evidence that testimony concerning the character of a witness, including a party witness, is admissible for purposes of impeachment. 1 Stansbury's N.C. Evidence §§ 35, 107 (Brandis rev. 1973); 13 Strong's N.C. Index 3d *Witnesses* § 5.2 (1978).

Even if the direct testimony of Christian were inadmissible, the cross-examination of Christian by defendants' counsel elicited, without objection, more testimony, including specific acts concerning Turner's bad character. Consequently, this assignment of error has no merit. *State v. Tew*, 234 N.C. 612, 616-17, 68 S.E. 2d 291 (1951).

On plaintiffs' appeal, the directed verdict entered in favor of defendant W. E. Turner is reversed and remanded for entry of judgment against defendant W. E. Turner.

On defendant's appeal we find no error.

Judges ARNOLD and ERWIN concur.