NO. COA14-29

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

COLLEGE ROAD ANIMAL HOSPITAL, PLLC;
PHILLIP LANZI and JAMIE LANZI,
     Plaintiffs

v.                                         New Hanover County
                                           No. 12 CVS 3404

JON KEDRICK COTTRELL and JULIE COTTRELL,
     Defendants


     Appeal by defendants from order entered 11 September 2013 by Judge Paul L. Jones in New Hanover County Superior Court. Heard in the Court of Appeals 5 June 2014.

>    *Marshall, Williams & Gorham, LLP, by John L. Coble, for Plaintiffs.*

>    *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for Defendants.*

     ERVIN, Judge.

     Defendants Jon Kedrick Cottrell and Julie Cottrell appeal from an order granting summary judgment in favor of Plaintiffs College Road Animal Hospital, Phillip Lanzi, and Jamie Lanzi, and ordering Defendants to pay 50% of all past due and future payments required under a loan obtained from Bank of America. On appeal, Defendants contend that the trial court erred by entering summary judgment in favor of Plaintiffs and, concomitantly, declining to enter summary judgment in their favor on the grounds that the Lanzis and the Cottrells were not

principals under the loan and that the existence of an express contract between the parties precluded the maintenance of an action for unjust enrichment. After careful consideration of Defendants' challenges to the trial court's order in light of the record and the applicable law, we conclude that summary judgment was improperly entered in favor of Plaintiffs, that summary judgment should have been entered in favor of Ms. Cottrell with respect to Plaintiffs' contribution claim, and that summary judgment should have been entered in favor of Defendants with respect to Plaintiffs' unjust enrichment claim; that the trial court's order should be reversed; and that this case should be remanded to the New Hanover County Superior Court for further proceedings not inconsistent with this opinion.

## I. Factual Background

### A. Substantive Facts

In May of 2009, Dr. Cottrell purchased the 50% interest in College Road that had been previously owned by Dr. Robert Weedon. Prior to that date, Dr. Cottrell had been employed by College Road and operated its Carolina Beach location. After purchasing Dr. Weedon's interest, Dr. Cottrell was responsible for operating the Carolina Beach location while Dr. Lanzi was responsible for operating the College Road location.

On 16 September 2009, College Road obtained a $293,000 loan from Bank of America for the purpose of making capital improvements at the Carolina Beach location. According to the loan agreement, the "Borrower shall make all scheduled payments to Lender." In addition, "[e]ach Borrower and each Guarantor agree[d] that [their] obligation to make payments to [the] Lender on the Indebtedness under [the] Agreement [was] absolute and unconditional." The "dismissal, resignation or other withdrawal" from College Road's practice by "any licensed professional who is an owner or shareholder" was prohibited under the loan agreement. The list of incidents of default specified in the loan agreement included, in addition to a failure to make required payments, any failure to adhere to any of the other covenants set forth in that document.

Dr. Lanzi and Dr. Cottrell signed the loan agreement in the section designated for the signature of the borrower. In addition, the two men, along with their wives, executed the guaranty agreement. The loan agreement was modified on 11 March 2010 to increase the principal amount from $293,000 to $312,000, with final disbursement under the loan agreement having been made in December of 2010.[1]

---

[1]LaWe Holdings, LLC, an entity in which Dr. Lanzi and Dr. Weedon were involved, became involved in this series of transactions as an additional guarantor on 28 October 2009.

On 17 May 2011, the Cottrells sent an email to Dr. Lanzi indicating that Dr. Cottrell was relinquishing his interest in College Road and defaulting on his agreement to purchase shares in Dr. Weedon's business. On 15 June 2011, Dr. Lanzi's attorney responded to the Cottrells' e-mail by accepting Dr. Cottrell's resignation and indicating that Dr. Lanzi did not wish to enter into an employer-employee relationship with Dr. Cottrell. On 20 July 2011, the Cottrells' attorney notified Bank of America that Dr. Cottrell was no longer affiliated with College Road and that the Cottrells had terminated their personal guarantee with respect to any further advances made to or obligations incurred by College Road.

According to Dr. Lanzi, he and Dr. Cottrell understood that the two of them would contribute half of the funds needed to repay the loan. The actual payments under the loan agreement, however, were made by College Road, with the funds needed for the making of these payments having been derived from the operation of both the College Road and Carolina Beach locations. After the termination of Dr. Cottrell's relationship with the practice, College Road continued to make the required regular monthly payments, which totaled $74,165.80 at the time of the hearing in the trial court, without any contribution from Dr.

Cottrell.  Bank of America has never made any demand for payment upon Dr. Cottrell.

## B. Procedural History

On 29 August 2012, Plaintiffs filed a complaint against Defendants alleging claims sounding in equitable contribution and unjust enrichment.  On 27 September 2012, Defendants filed an answer in which they denied the material allegations of Plaintiffs' complaint.  On 5 June 2013, Plaintiffs filed a motion seeking the entry of summary judgment in their favor that was accompanied by an affidavit executed by Dr. Lanzi.  On 28 August 2013, Defendants filed a motion seeking the entry of summary judgment in their favor that was accompanied by an affidavit executed by Dr. Cottrell.  On 11 September 2013, the trial court entered an order granting Plaintiffs' summary judgment motion, denying Defendants' summary judgment motion, ordering Defendants to pay $37,082.90, an amount that represented half of the monthly payments that had been made to Bank of America under the loan agreement between July 2011 and May 2013, and ordering Defendants to provide 50% of the funds used to make the remaining payments required under the loan agreement.  Defendants noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

## A. Standard of Review

"Summary judgment is proper when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 26, 588 S.E.2d 20, 25 (2003) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). During the consideration of a motion for summary judgment:

> The moving party bears the burden of demonstrating the lack of triable issues of fact. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). Once the movant satisfies its burden of proof, the burden then shifts to the non-movant to present specific facts showing triable issues of material fact. *Lowe v. Bradford*, 305 N.C. 366, 369-70, 289 S.E.2d 363, 366 (1982). On appeal from summary judgment, "we review the record in the light most favorable to the non-moving party." *Bradley v. Hidden Valley Transp., Inc.*, 148 N.C. App. 163, 165, 557 S.E.2d 610, 612 (2001), *aff'd*, 355 N.C. 485, 562 S.E.2d 422 (2002).

*Id.* at 26, 588 S.E.2d at 25-26. We will now utilize this standard of review in analyzing the validity of Defendants' challenges to the trial court's order.

## B Substantive Legal Analysis

### 1. Contribution Claim

The first of the two theories upon which Plaintiffs based their claim against Defendants was that of contribution.[2] "Contribution is generally defined as 'the right of one who has discharged a common liability or burden to recover of another also liable [the fractional] portion which he ought to pay or bear.'" *Irvin v. Egerton*, 122 N.C. App. 499, 501, 470 S.E.2d 336, 337 (1996) (alteration in original) (quoting 18 C.J.S. *Contribution* § 2, at 4 (1990)). Although "[i]t is a prerequisite to a claim for contribution that the party seeking contribution 'satisfy, by payment or otherwise, more than his just proportion of the common obligation or liability,'" *id.* (quoting 18 Am. Jur. 2d *Contribution* § 9, at 16 (1985)), this Court has determined that a plaintiff is "entitled to contribution" and has "satisfied more than his just proportion of that common obligation" when the "parties ha[d] a monthly obligation" and "each month . . . the plaintiff paid more than one-half of the monthly obligation." *Id.* As a result, a plaintiff seeking contribution-based relief is simply required to prove that the obligation exists, that the parties are both required to pay the obligation, and that one obligor has paid a

---

[2]In view of the fact that the trial court did not specifically delineate whether it found in favor of Plaintiffs on the basis of a contribution theory, an unjust enrichment theory, or both, we must analyze the validity of both of the theories set out in Plaintiffs' complaint in order to determine whether the trial court's order should be affirmed or reversed.

portion of the obligation for which the other obligor was legally responsible. *Id.*; *see also Nebel v. Nebel*, 223 N.C. 676, 686, 28 S.E.2d 207, 214 (1943) (stating that "[t]he right to sue for contribution does not depend upon a prior determination that the defendants are liable"); N.C. Gen. Stat. § 25-3-116(b) (providing that "a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law"). As a result of the fact that the trial court's order awarded relief against both Dr. Cottrell and Ms. Cottrell, we must examine their liability under a contribution theory separately.

a. Ms. Cottrell's Liability

As we have already noted, a litigant's ability to obtain relief on the basis of a contribution theory assumes that the plaintiff and the defendant are both obligated to make the underlying payment. For that reason, Plaintiffs were required to show that Ms. Cottrell was liable under the loan agreement in order to obtain relief from her based upon a contribution theory. We do not believe that Plaintiffs have made the required showing.

The only signatures appearing in the portion of the loan agreement at which the borrower or borrowers were supposed to

sign were those of Dr. Lanzi and Dr. Cottrell, who were the sole owners of interests in College Road. On the other hand, a careful review of the record clearly establishes that Ms. Cottrell did not sign the loan agreement in the location designated for the borrowers and that the only location in the loan agreement at which the signatures of either Ms. Lanzi or Ms. Cottrell appear is at the conclusion of the guaranty agreement. As a result, an examination of the loan agreement reveals that Ms. Cottrell never agreed to shoulder any obligations under that document except those set out in the guaranty agreement.

"A guaranty is a promise to answer for the payment of a debt or the performance of some duty in the event of the failure of another person who is himself primarily liable for such payment or performance." *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 52, 269 S.E.2d 117, 122 (1980). While "a surety is primarily liable for the discharge of the underlying obligation, and is engaged in a direct and original undertaking which is independent of any default," "[a] guarantor's duty of performance is triggered at the time of the default of another." *Id.* at 52-53, 269 S.E.2d at 122 (citations omitted). Consistently with this fundamental legal principle, the guaranty agreement contained in the loan agreement provides, in pertinent

part, that the guarantors "shall immediately pay to [the] Lender the outstanding balance of all Indebtedness" "[i]f [the] Borrower fails to pay all or any part of any indebtedness when due."

According to the undisputed evidence contained in the record, the loan at issue in this case is current. For that reason, neither Ms. Lanzi nor Ms. Cottrell are currently liable for any amount owed to Bank of America under the loan agreement. Thus, Ms. Cottrell is not jointly obligated with the other parties to pay the amount owed to Bank of America under the loan agreement. As a result, the trial court erred by entering summary judgment in favor of Plaintiffs and against Ms. Cottrell on the basis of a contribution theory.

## b. Guarantors' Liability

Secondly, Plaintiffs argue that Dr. Lanzi and Dr. Cottrell were primarily liable on the note given the presence of their signatures on the loan agreement in the block marked for borrowers and were, simultaneously, secondarily liable for the amount owed under the loan as evidenced by their signatures at the conclusion of the guaranty agreement. Although Plaintiffs appear to suggest that the joint obligation required for the successful assertion of a contribution claim can arise from Dr. Cottrell's status as a guarantor, we do not find this contention

persuasive in light of the principle that "[a] guarantor's duty of performance is triggered at the time of the default of another," *id.* at 52, 269 S.E.2d at 122, and the fact that the guaranty agreement at issue in this case provides that the "Guarantor shall immediately pay to Lender the outstanding balance of all Indebtedness" if "Borrower fails to pay all or any part of any Indebtedness when due." As a result, given that a guaranty agreement constitutes nothing more than a "promise to pay the debt of another at maturity if not paid by the principal debtor," *O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 220, 250 S.E.2d 587, 593 (1978), and the fact that "[t]he right to sue upon an absolute guaranty of payment arises immediately upon the failure of the principal debtor to pay at maturity," *id.*, the parties to the present guaranty agreement have no current obligation to make any payment to Bank of America relating to the loan agreement. As a result, to the extent that the trial court's decision to grant summary judgment in Plaintiffs' favor rested upon the understanding that Dr. Cottrell's decision to sign the guaranty agreement rendered him jointly liable on the underlying obligation created by the loan agreement, that decision constituted an error of law.[3]

_____

[3]In their brief, Plaintiffs emphasize the fact that Dr. Cottrell's withdrawal from the practice constituted an incident of default under the loan agreement. Although Plaintiffs'

### c. Individual Liability

The principal argument advanced in Plaintiffs' brief in support of the trial court's order is a contention that, since Dr. Lanzi and Dr. Cottrell signed the loan agreement in their individual capacities, they are co-borrowers under the loan agreement and are jointly obligated to repay the loan. According to Defendant, however, Dr. Lanzi and Dr. Cottrell signed the loan agreement as agents of College Road instead of in their individual capacities. As a result of the fact that the record demonstrates the existence of a genuine issue of material fact concerning the capacity in which Dr. Lanzi and Dr. Cottrell signed the loan agreement, we conclude that the trial court erred by granting summary judgment in favor of Plaintiffs and against Dr. Cottrell with respect to the contribution issue and that this issue needs to be decided after a full trial on the merits.

According to N.C. Gen. Stat. § 25-3-402(b):

> (1) If the form of the signature shows unambiguously that the signature is made on behalf of the represented

---

assertion is clearly correct as a factual matter, the record contains no indication that Bank of America has actually declared the loan in default. In addition, the liability of the guarantors is triggered by nonpayment rather than the occurrence of any incident of default. As a result, the fact that Dr. Cottrell's withdrawal from the practice constituted an incident of default under the loan agreement has no bearing on the proper resolution of this case.

person who is identified in the instrument, the representative is not liable on the instrument.

(2) Subject to subsection (c) of this section, if (i) the form of the signature does not show unambiguously that the signature is made in a representative capacity, or (ii) the represented person is not identified in the instrument, the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument. With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.

Although the Supreme Court has clearly stated that, "when the issue to be decided is the intent of a party, the general rule is that it is a question of fact to be determined by a jury," *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 663, 370 S.E.2d 375, 388 (1988), that rule is modified in cases involving negotiable instruments by N.C. Gen. Stat. § 25-3-402(b), which provides that the signatory to a negotiable instrument is liable to a holder in due course unless his or her signature unambiguously shows that it was made in the person's representative capacity or the represented party is not named in the instrument and that the signatory of such an instrument is liable to anyone else other than a holder in due course unless

he or she demonstrates that the original parties did not intend for the representative party to be liable on the instrument. As a result, in cases in which the party seeking to hold a signatory liable on the instrument is a person or entity other than a holder in due course,[4] "[t]he presumption is that nothing else appearing, a person who signs his or her name on the right-hand bottom corner of the face of a promissory note is a maker of that note and is primarily liable thereon." *Federal Land Bank of Columbia v. Lieben*, 86 N.C. App. 342, 346, 357 S.E.2d 700, 703 (1987). However, "this presumption may be rebutted by parol evidence that the signer of the note is a surety and that the creditor knew at the time he received the note that the signer of the note was signing as a surety." *Id.* Thus, although "one who places his unqualified signature on an instrument as maker or indorser will not be able to escape liability as such by a mere assertion that he intended to sign only as the representative of a corporation of which he is an

---

[4]Although Plaintiff correctly notes that Bank of America appears to be a holder in due course as defined in N.C. Gen. Stat. § 25-3-402(a), that fact has no bearing on the proper resolution of this case given that Bank of America has not attempted to enforce the note and is not a party to this action. As a result of the fact that College Road, Dr. Lanzi, and Ms. Lanzi do not hold the loan agreement, they cannot, by definition, be holders in due course, rendering the provisions of N.C. Gen. Stat. § 25-3-402(b) applicable to claims asserted on behalf of holders in due course irrelevant to a proper resolution of this case.

officer or director," *Keels v. Turner*, 45 N.C. App. 213, 217, 262 S.E.2d 845, 847, *disc. review denied*, 300 N.C. 197, 269 S.E.2d 264 (1980), Dr. Cottrell is entitled to attempt to rebut the presumption that he signed the note as a maker with parol or other evidence.

As Plaintiffs correctly note, the signatures of Dr. Lanzi and Dr. Cottrell on the loan document appear in the section in which the borrower or borrowers were supposed to sign and do not unambiguously reflect that the two men signed the loan agreement in a solely representative, rather than an individual, capacity. In addition, Dr. Lanzi asserted in his affidavit that the loan agreement was executed by Dr. Cottrell and himself "with the understanding and agreement that [the parties] would be responsible for contributing one-half of the payment of the loan amount due." On the other hand, the loan agreement unambiguously named College Road as the sole borrower without providing any indication that either Dr. Lanzi or Dr. Cottrell, whose names only appear on the signature line, had executed the loan agreement in their individual capacities. Moreover, the sole borrower named in the loan modification agreement, which only Dr. Lanzi signed, was College Road. Finally, the sole borrower named in the final disbursement notification, which Dr. Lanzi signed in his capacity as a "member," was College Road.

In his affidavit, Dr. Cottrell asserted that the parties signed the loan agreement and the final disbursement statement "as owners and on behalf of College Road." Finally, Plaintiff's counsel stated at the summary judgment hearing that their clients did not "contest that the borrower under the loan is the PLLC." As a result, a simple examination of the contents of the various loan and loan-related documents, the parties' affidavits, and the comments made by the parties' counsel at the summary judgment hearing suggest the existence of a genuine issue of material fact concerning the capacity in which Dr. Lanzi and Dr. Cottrell signed the loan agreement.

Our conclusion that Dr. Cottrell forecast sufficient evidence to demonstrate the existence of a genuine issue of material fact concerning the extent to which he and Dr. Lanzi signed the loan agreement in a representative or an individual capacity is bolstered by a number of other factors. For example, the undisputed record evidence establishes that College Road made all of the payments required under the loan agreement, that the amortization schedule provided by Bank of America listed College Road as the sole borrower, and that the additional guarantee provided by LaWe Holdings was secured "[f]or the purpose of inducing Bank of America . . . to make, extend and renew a loan" made on behalf of a borrower elsewhere

identified as College Road. In addition, the record clearly reflects that both Dr. Lanzi and Dr. Cottrell executed a guaranty agreement intended to secure the loan. As we have already noted, "[a] guaranty is a promise to answer for the payment of a debt or the performance of some duty in the event of the failure of another person who is himself primarily liable for such payment or performance." *Branch Banking & Trust Co.*, 301 N.C. at 52, 269 S.E.2d at 122; *see also Investment Properties v. Norburn*, 281 N.C. 191, 195, 188 S.E.2d 342, 345 (1972) (stating that obligations arising out of guaranty agreements are "separate and independent of the obligation of the principal debtor"); *EAC Credit Corp. v. Wilson*, 281 N.C. 140, 146, 187 S.E.2d 752, 756 (1972) (stating that "[d]ecisions of [the Supreme] Court [have] treat[ed] the obligation of a guarantor of payment separate and distinct from that of the maker" on the theory that the "'contract of guaranty is [the guarantors'] own separate contract jointly and severally to pay the debts'" and that guarantors "'are not in any sense parties to the [note].'" (final alteration in original) (quoting *Arcady Farms Milling Co. v. Wallace*, 242 N.C. 686, 689, 89 S.E.2d 413, 415 (1955)); *Sykes v. Everett*, 167 N.C. 600, 608, 83 S.E. 585, 590 (1914) (holding "that a surety is considered as a maker of the note [while] a guarantor is never a maker"). As this Court

has previously noted, "'where individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual.'" *Keels*, 45 N.C. App. at 218, 262 S.E.2d at 847 (quoting 19 Am. Jur. 2d *Corporations* § 1343 (1965)). In light of that logic, a reasonable finder of fact could conclude that the signatures of Dr. Lanzi and Dr. Cottrell on the loan agreement were affixed in their capacity as officers of College Road and that their signatures on the guaranty agreement were affixed in their individual capacity.[5] As a result, after "review[ing] the record in the light most favorable to the non-moving party," *Broughton*, 161 N.C. App. at 26, 588 S.E.2d at 25, we hold that there is a genuine issue of material fact with respect to the issue of whether the parties, including Bank of America, intended that Dr. Lanzi and Dr. Cottrell signed the loan agreement in their representative or individual capacities and that the trial court erred to the extent that it entered summary judgment in favor of Plaintiffs with respect to the contribution issue on the basis of a

---

[5]In view of the fact that the evidence concerning the intention with which Dr. Lanzi and Dr. Cottrell signed the loan agreement conflicts, we need not comment upon the absence of any evidence concerning the intentions with respect to this issue that Bank of America, which was clearly one of the "original parties," N.C. Gen. Stat. § 25-3-402(b)(2), may have had.

determination that Dr. Cottrell signed the loan agreement in his individual, rather than a representative, capacity.[6]

## 2. Unjust Enrichment Claim

The second claim asserted in Plaintiffs' complaint sounded in unjust enrichment. "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor," *Atlantic Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95-96, 150 S.E.2d 70, 73 (1966), with the availability of an unjust enrichment remedy "'based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another.'" *Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (quoting *Atlantic Coast Line R.R. Co.*, 268 N.C. at 96, 150 S.E.2d at 73), *disc. review denied*, 344 N.C. 630, 477 S.E.2d 39 (1996). On the other hand, "[t]he

---

[6]The same logic defeats Defendants' contention that the trial court erred by failing to enter summary judgment in their favor with respect to Plaintiffs' contribution claim. As a practical matter, the fact that the signatures of Dr. Lanzi and Dr. Cottrell on the loan agreement were not unambiguously made in their representative, rather than their individual, capacities coupled with the statement in Dr. Lanzi's affidavit to the effect that the parties contemplated that they would be equally responsible for repaying the loan amount would suffice to permit a trier of fact to conclude that Dr. Cottrell signed the loan agreement as a maker and was subject to individual liability for the resulting indebtedness.

hallmark rule of equity is that it will not apply 'in any case where the party seeking it has a full and complete remedy at law,'" *id.* (quoting *Jefferson Standard Ins. Co. v. Guilford Cnty.*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945)), which means that, "[w]here, as here, there is a contract which forms the basis for a claim, 'the contract governs the claim and the law will not imply a contract.'" *Id.* (quoting *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)); *see also Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) (holding that "[o]nly in the absence of an express agreement of the parties will courts impose a [quasi-contract] or a contract implied in law in order to prevent an unjust enrichment"); *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) (holding that "[i]t is a [well-established] principle that an express contract precludes an implied contract with reference to the same matter"). In light of the principle that unjust enrichment relief is not available in instances governed by an express contract, Defendants argue that the "contractual relationship between the Company and the Bank concerning the Loan to the Company, and the separate contractual relationship between the Bank and the [guarantors] on the Guaranty, are clearly defined and governed

by said respective, express agreements." Defendants' argument has merit.[7]

As an initial matter, we have no hesitation in concluding that the loan agreement constitutes a "contract which forms the basis for [Plaintiffs'] claim." *Hinson*, 123 N.C. App. at 473, 473 S.E.2d at 385. In addition, the loan agreement clearly governs the rights and responsibilities of all of the parties to that instrument with respect to the loan payment process. More specifically, the loan agreement provides that "[t]he liability of Borrower and each Guarantor hereunder is joint and several . . . upon an Event of Default hereunder." Although there is, as we have previously determined, a material factual dispute over the extent to which Dr. Lanzi and Dr. Cottrell are individually liable as borrowers and although the failure of payment necessary to trigger the obligation of the guarantors to make payment has clearly not yet occurred, there is no question but that the loan agreement makes each borrower jointly and severally liable[8] for the entire amount of the resulting

---

[7]In their brief, Plaintiffs failed to respond to this aspect of Defendants' challenge to the lawfulness of the trial court's order. Instead, their brief makes clear that the unjust enrichment claim was asserted in the alternative in the event that their contribution claim did not succeed.

[8]As this Court has previously stated, "[w]hen joint and several liability is imposed, 'each liable party is individually responsible for the entire obligation.'" *In re D.A.Q.*, 214 N.C. App. 535, 539, 715 S.E.2d 509, 512 (2011) (quoting *Black's Law*

indebtedness. Similarly, as we have previously noted, the loan agreement provides that, in the event that the borrowers fail to make any payment required under the loan agreement, the guarantors become liable for the full amount owed. "If a principal obligation is guaranteed by two or more persons, each must pay the proportional share of the liability, and a guarantor who has paid more than his or her share is entitled to contribution from the others and may sue to enforce that right." 38 Am. Jur. 2d *Guaranty* § 100 (2010). As a result, since the loan agreement, when read in conjunction with applicable principles of North Carolina law, fully governs the relationship between the parties concerning the extent, if any, to which they are liable for any indebtedness arising under that instrument, the trial court erred to the extent that it entered summary judgment in Plaintiffs' favor and failed to enter summary

---

*Dictionary* 997 (9th ed. 2009)). Thus, in instances involving joint and several liability, "'the liability of each defendant is not necessarily dependent upon the liability of any other defendant, and [the] plaintiff may be made whole by a full recovery from any defendant.'" *Harlow v. Voyager Commc'ns V*, 348 N.C. 568, 572, 501 S.E.2d 72, 74 (1998) (quoting 10 James W. Moore et al., *Moore's Federal Practice* ¶ 55.25, at 55-46 (3d ed. 1997)). As a result, given that "[c]ontribution is generally defined as the right of one who has discharged a common liability or burden to recover of another also liable [the fractional] portion which he ought to pay or bear," *Irvin*, 122 N.C. App. at 501, 470 S.E.2d at 337 (alteration in original), a person who has paid a disproportionate share of a debt is entitled to contribution from any other person who was jointly and severally liable for the payment of that debt.

judgment in Defendants' favor with respect to the unjust enrichment claim asserted in Plaintiffs' complaint.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by granting summary judgment in favor of Plaintiffs, by failing to grant summary judgment in favor of Ms. Cottrell with respect to Plaintiffs' contribution claim, and by failing to grant summary judgment in favor of Defendants with respect to Plaintiffs' unjust enrichment claim. As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the New Hanover County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

Judges ROBERT N. HUNTER, JR. concurred in this opinion prior to 6 September 2014.

Judge DAVIS concurs.