**MOUNTAIN FARM CREDIT SERVICE v. PURINA MILLS, INC.**

[119 N.C. App. 508 (1995)]

Affirmed and remanded for hearing on sanctions.

Chief Judge ARNOLD and Judge McGEE concur.

---

MOUNTAIN FARM CREDIT SERVICE, ACA, PLAINTIFF v. PURINA MILLS, INC., DEFENDANT v. GREY DAWN FARMS, ROBERT A. HETHERINGTON, JR., WARREN G. KILLIAN AND WALNUT GROVE AUCTION SALES, INC., COUNTERCLAIM DEFENDANTS

No. COA94-972

(Filed 18 July 1995)

1. **Secured Transactions § 34 (NCI4th)— security agreement—identification of debtor and collateral—sufficiency—partnership sufficiently bound**

   In an action to determine which of two secured parties was entitled to proceeds from the sale of the debtors' cattle, the security agreement of defendant Purina: (1) sufficiently identified the debtor where it listed the name of two individuals doing business as a farm, rather than identifying the farm as a partnership; (2) sufficiently identified the collateral as all dairy cattle and proceeds from milk sales and identified the location of the cattle on debtors' farm; and (3) sufficiently bound the partnership, though signed by only one partner individually, where the evidence showed that partner was authorized to act for the partnership in signing the security agreement and financing statements.

   **Am Jur 2d, Secured Transactions §§ 174-183.**

   **Sufficiency of description of collateral in security agreement under UCC secs. 9-110 and 9-203. 100 ALR3d 940.**

2. **Costs § 37 (NCI4th)— sale of collateral—conversion of proceeds by third party—no right to attorney fees from third party**

   A creditor which perfected its security interest in the debtor's cattle was not entitled to recover attorney fees based on the security agreement from a third party creditor which had not perfected its security interest in the cattle and which converted the proceeds from the sale of the debtor's cattle, since N.C.G.S. § 6-21.2 does not authorize attorney fees against a third party not

transactionally related to the document containing the attorney fees provision.

**Am Jur 2d, Costs §§ 79-82.**

Appeal by plaintiff from judgments entered 8 March 1994 and 27 May 1994 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 22 May 1995.

Appeal by defendant from judgment entered 8 March 1994 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 22 May 1995.

Appeal by counterclaim defendants Grey Dawn Farms and Robert Hetherington from judgments entered 8 March 1994 and 27 May 1994 by Judge C. Walter Allen in Buncombe County Superior Court. Heard in the Court of Appeals 22 May 1995.

Two secured parties, Purina Mills (Purina) and Mountain Farm Credit Service (MFCS), claim entitlement to proceeds from the sale of the debtor's cattle. Purina maintains that it holds a first priority, perfected security interest in the proceeds, whereas MFCS alleges that Purina's security interest is flawed in many respects.

The debtor, Grey Dawn Farms (GDF), is a general partnership formed in 1988 by Robert Hetherington and Warren Killian, its sole partners, to operate a dairy farm. During its operation, GDF entered into several security agreements with MFCS, offering the cattle as collateral. MFCS concedes it did not perfect its security interest, making it subordinate to an otherwise perfected security interest. Purina, which sells feed and supplies to farmers, alleges that in 1991 it began supplying GDF with feed on credit. When it learned that GDF planned to auction its cattle, Purina obtained a security agreement and filed financing statements giving it a security interest in the cattle. All documents were purportedly signed by both Hetherington and Killian.

After the auction, MFCS and other named creditors were paid in full, but Purina's interest was ignored, largely because Hetherington did not consider Purina a creditor. Purina demanded payment from MFCS, and MFCS brought this declaratory judgment action to determine who was entitled to the proceeds from the sale of the cattle. Purina counterclaimed alleging conversion.

At trial, Hetherington denied signing any of the instruments granting Purina a security interest and denied that Killian had the authority to indebt the partnership. He added that Killian was expressly for-

MOUNTAIN FARM CREDIT SERVICE v. PURINA MILLS, INC.

[119 N.C. App. 508 (1995)]

bidden to buy feed on credit. Hetherington conceded, however, that Killian ran the day to day operations of the farm. Purina employees testified that they witnessed Killian's signature on the documents, but not Hetherington's since he was not at the farm at the time. Killian then retained the documents and mailed them to Purina after Hetherington purportedly signed them.

The jury found that GDF contracted to purchase feed from Elmore's Feed and Seed, a Purina dealer, that GDF failed to pay for the feed, and that Purina was entitled to recover $30,779.51 from GDF. It also found that Killian had the authority to, and did, sign the security agreement and financing statements on behalf of GDF, but that Hetherington did not sign the documents. Finally, it found that MFCS received $66,521.02 from the sale of GDF's cattle.

Based on these findings, the trial judge entered a judgment concluding that as a general partner in GDF Hetherington, jointly and severally with GDF, owed Purina $30,779.51, and that Purina was entitled to attorney's fees of $4,616.92, or fifteen percent of $30,779.51. He also concluded that the financing statements perfected Purina's security interest in GDF's cattle, and that MFCS converted Purina's property by receiving and refusing to pay over the proceeds. Accordingly, he determined that Purina was entitled to receive from MFCS any amount Purina could get from GDF, except attorney's fees, up to $66,521.02.

The trial court denied GDF and Hetherington's motions for a new trial and amended the judgment in part. With the exclusion of counterclaim defendant Walnut Grove Auctions, all parties appeal.

*Carter & Kropelnicki, P.A., by Steven Kropelnicki, Jr., for plaintiff appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Stephen R. Hunting and Russell B. Killen, for defendant appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Michelle Rippon, for counterclaim defendant appellants.*

ARNOLD, Chief Judge.

I. MFCS's Appeal

A. Directed Verdict and Judgment Notwithstanding the Verdict

[1] MFCS first contends the trial court erred in denying its motion for a directed verdict and judgment notwithstanding the verdict. It argues

that Purina's evidence did not establish the existence of, nor the perfection of, a valid security agreement. MFCS believes the security agreement is facially defective because it (1) fails to name GDF as the debtor, listing the debtor as "Warren Killian and Robert Hethrington dba Grey Dawn Farm," (2) does not describe the cattle as GDF cattle, and (3) appears to be signed in an individual, rather than representative, capacity.

"In evaluating a motion for directed verdict, the non-movant's evidence must be taken as true and all inconsistencies in the evidence resolved in the non-movant's favor." *NCNB v. Gutridge*, 94 N.C. App. 344, 346, 380 S.E.2d 408, 410, *disc. review denied*, 325 N.C. 432, 384 S.E.2d 539 (1989). "The standard is whether the evidence so considered is sufficient to submit the case to the jury." *Id.* The same standard applies in considering a motion for a judgment notwithstanding the verdict. *Smith v. Pass*, 95 N.C. App. 243, 382 S.E.2d 781 (1989).

### 1. Identification of Debtor

The security agreement lists the debtor as "Warren Killian and Robert Hethrington dba Grey Dawn Farm." MFCS contends this is an insufficient identification of the debtor because designation of "two individuals, doing business as Grey Dawn Farm, is not synonymous with the partnership, Grey Dawn Farms."

"A security agreement must sufficiently designate the debtor. The failure of the security agreement to contain the . . . correct name of a business debtor will not necessarily render a security agreement invalid." 79 C.J.S. *Secured Transactions* § 40 (1995). Here, the security agreement identifies GDF, but does not identify it as a partnership. While a clearer designation of the true debtor is preferred and encouraged, the designation is not so lacking as to be fatal.

### 2. Description of Collateral

MFCS also contends the security agreement is facially invalid because it does not identify the collateral as GDF dairy cattle as opposed to dairy cattle belonging to Killian or Hetherington individually. We do not agree.

"[A]ny description of personal property . . . is sufficient whether or not it is specific if it reasonably identifies what is described." N.C. Gen. Stat. § 25-9-110 (1986); *see also* Richard A. Lord and Charles C. Lewis, *North Carolina Security Interests* § 3-3 (1985). The security agreement describes the collateral as "[a]ll dairy cattle including all

bulls, cows, heifers, calves and all progeny resulting from said cattle; also proceeds and accounts receivable resulting from milk sales." It also lists the location of the collateral as "on [the] premises of Jean Hethrington, in the City of Morganton, County of Burke, State of North Carolina," the site of the farm. This description reasonably identifies the collateral.

### 3. Debtor's Signature

MFCS also contends that the security agreement was not signed in the partnership name and, therefore, does not operate to create a security interest in GDF's cattle. We disagree.

A security interest attaches once, among other things, "the debtor has signed a security agreement." N.C. Gen. Stat. § 25-9-203(1)(a) (1986). "Documents signed on behalf of a partnership *should* indicate that the debtor is a partnership and that the signing individual is a partner." Richard C. Tinney, *Sufficiency of Debtor's Signature on Security Agreement or Financing Statement* under UCC §§ 9-203 and 9-402, 3 A.L.R.4th 502 (1981) (emphasis added). However, "[g]enerally, the signature of a partner will suffice, since, under principles of partnership law which continue in effect under UCC § 1-103, any partner has the power to bind the partnership as to matters within the scope of the partnership business." *Id.* In addition,

> when an authorized principal of the company has executed a security agreement, the absence of the true business name should not defeat the security interest as long as the evidence indicates that the signer did in fact intend to bind the entity by the signature. Of course, the individual's signature will not always operate to bind the business entity. The individual must have authority to encumber the business property.

James J. White and Robert S. Summers, *Uniform Commercial Code* § 22-5 (3d ed. 1988).

Under partnership law, applicable through N.C. Gen. Stat. § 25-1-103 (1986),

> [e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the par-

ticular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

N.C. Gen. Stat. § 59-39(a) (1989).

We have stated that "in order for a written instrument to be binding on a partnership, the instrument must be executed in the partnership name." *In the Matter of Oxford Plastics v. Goodson*, 74 N.C. App. 256, 262, 328 S.E.2d 7, 11 (1985). Where one partner signed, in his individual name, a contract modifying a partnership contract, we determined that plaintiff had the burden of proving that the other partners either authorized or ratified the modification of the original instrument. *Id.* When a document is not signed in the partnership name "a plaintiff must show that the defendant was acting on behalf of the partnership or that the partnership ratified the individual's act." *Messer v. Laurel Hill Associates*, 93 N.C. App. 439, 445, 378 S.E.2d 220, 224 (1989).

Here, Killian did not sign the documents in the partnership name, nor did the partnership ratify his actions. However, sufficient evidence was presented that he was acting on behalf of the partnership and had the authority to do so. Indeed, the jury found that Killian was authorized to act for the partnership in signing the security agreement and financing statements. Thus, the trial court did not err in denying MFCS's motions for a directed verdict and judgment notwithstanding the verdict.

We reach a similar conclusion with regard to the financing statements. N.C. Gen. Stat. § 25-9-402(7) (1986) states that "[a] financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners." The Amended Official Comment states that "[i]n the case of partnerships it contemplates filing in the partnership name, not in the names of any of the partners and not in any other trade name." The purpose of a financing statement is to provide notice to third parties of the debtor-creditor relationship. Lord and Lewis, *supra*, § 3-1, at 18. Here, the correct debtor is listed in the debtor box accompanied by the names of the individual partners. A search request under the name GDF located Purina's financing statements. This identification comports with the statute's requirements. Moreover, for the reasons stated above, the trial court did not err in denying Purina's motion for a directed verdict and judgment notwithstanding the verdict regarding the manner of signing the financing statements.

MOUNTAIN FARM CREDIT SERVICE v. PURINA MILLS, INC.

[119 N.C. App. 508 (1995)]

While we find that the trial court did not err in denying plaintiff's motion for a directed verdict and judgment notwithstanding the verdict, the minimal formalities by Purina's agents in executing these documents should certainly be avoided, and in the future, Purina should exercise greater care in conforming to the simple requirements of the Uniform Commercial Code, thereby avoiding further litigation.

### B. Issues Presented and Jury Instructions

MFCS also argues that the trial court committed numerous errors in its submission of the issues to the jury and in its charge to the jury. In large part, this issue is based on MFCS's position on the facial validity of the security documents and, in light of our holding on that issue, it is unnecessary to address this issue. To the extent this issue raises additional questions, we have reviewed them and conclude that the trial court did not err.

### C. Interest on Award

Finally, MFCS argues that the trial court erred in entering judgment against it at eighteen percent interest per annum, rather than the legal rate of eight percent. GDF and Hetherington also raise this issue. We do not address this issue, however, because Purina, in effect, concedes the argument in its brief. There, Purina states that "in light of the amount at issue, Purina has no objection to this Court's remanding with those instructions," those instructions being a reduction to the legal rate. In doing so, Purina abandons its cross-assignment of error.

### II. Purina's Appeal

[2] In its judgment, the trial court concluded that "Purina Mills is entitled to an award of attorneys['] fees against Grey Dawn Farms and Robert A. Hetherington, Jr., jointly and severally, in the amount of $4,616.92, which is 15% of $30,779.51." It did not allow Purina to recover attorneys' fees from MFCS. On appeal, Purina contends this was error. Specifically, it argues that its security agreement with GDF provides for attorneys' fees out of the proceeds of the collateral, and the fact that MFCS converted those proceeds should not work to reduce Purina's remedy.

MFCS did not respond to this argument. However, we agree with the trial court that an award of attorneys' fees against MFCS based on the security agreement would be improper. N.C. Gen. Stat. § 6-21.2

(1986), the statutory fees provision that applies to this type of instrument, does not authorize attorneys' fees against a third party who is not transactionally related to the document containing the fees provision. Rather, the statute speaks mainly of fees assessed against the debtor, and MFCS is neither bound by nor liable for any obligation between GDF and Purina for attorneys' fees.

### III. GDF and Hetherington's Appeal

GDF and Hetherington argue that the trial court erred in awarding Purina attorneys' fees. It is not necessary to address this argument as Purina has agreed that the judgment may be modified to omit this award. In its appellee's brief, Purina states that it "does not object to a remand with instructions that the judgment should not include an award of attorneys' fees against Grey Dawn and Hetherington."

In conclusion, the judgment is reversed in part and remanded so that the trial court may (1) modify the judgment to reflect interest at the legal rate, and (2) omit an award of attorneys' fees against GDF and Hetherington. In all other respects, the judgment is affirmed.

Affirmed in part, reversed in part, and remanded.

Judges LEWIS and McGEE concur.