DeCristoforo v. Givens, 2015 NCBC 53.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 4877

VERONICA DECRISTOFORO,
Individually and Derivatively on
Behalf of Lindy's Homemade, LLC;
and DAMON DECRISTOFORO,

   Plaintiffs,

  v.

PAUL M. GIVENS; PITTCO
CAPITAL PARTNERS III, L.P.;
ANDREW SEAMONS; LEONARD
KAYE; and LINDY'S HOMEMADE,
LLC,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION

{1} THIS MATTER is before the Court on Plaintiffs' Verified Motion to Enforce Settlement Agreement ("Motion to Enforce") and Plaintiffs' Motion to Strike several affidavits filed in opposition to the Motion to Enforce. For the reasons stated below, the Motion to Enforce is GRANTED. The Motion to Strike is DENIED AS MOOT.

> *Erwin, Bishop, Capitano & Moss, P.A. by J. Daniel Bishop and A. Todd Capitano for Plaintiffs.*
>
> *Parker Poe Adams & Bernstein LLP by Michael G. Adams and A. Todd Sprinkle for Defendants Paul M. Givens, Pittco Capital Partners III, L.P., Andrew Seamons, and Leonard Kaye.*
>
> *The Ward Law Firm, P.A. by John E. Rogers, II for Defendant Lindy's Homemade, LLC.*
>
> *Robinson Bradshaw & Hinson, P.A. by Mark W. Merritt and Pearlynn G. Houck for Defendant Special Matters Committee of Lindy's Homemade, LLC.*

Gale, Chief Judge.

## I.    NATURE OF THE MATTER BEFORE THE COURT

{2}    Plaintiffs seek to enforce a settlement they contend was reached at mediation.  Those attending the mediation signed a mediation form indicating that "a full and final agreement of all issues was reached," and incorporating terms on an attached Exhibit A, which provided that "[t]he parties hereby agree to the following terms, contemplating a further statement of their agreement and complete mutual release."  (Verified Mot. Enforce Settlement Agreement ("Mot. Enforce") Attach. 1, Ex. A.)  One of the attendees signed the covering report but did not sign Exhibit A and left before it was finalized, although his counsel remained.  Defendants include corporate entities whose attending representatives were also defendants in their individual capacities.  The individuals who were both corporate representatives and individual defendants each affixed a single, unqualified signature.  Defendants contend that no settlement was reached, claiming that all necessary parties did not join the agreement, which was, in any event, only an "agreement to agree," with illusory commitments.  For reasons discussed below, the Court finds that an enforceable, full and final settlement agreement was reached.

## II.    BACKGROUND

### A. Parties

{3}    Veronica DeCristoforo ("V. DeCristoforo") and her husband, Damon DeCristoforo ("D. DeCristoforo") (collectively "Plaintiffs") are residents of Mecklenburg County, North Carolina.

{4}    Defendant Lindy's Homemade, LLC ("Lindy's" or the "Company") is a Delaware limited liability company that operates in the frozen dessert industry and produces Italian ice, gelato, sorbet, sour blasters, and "Body Quest Frozen Protein Dessert."  (Am. Compl. ¶ 11.)

{5}    V. DeCristoforo is a member of Lindy's and has served as Lindy's President and Chief Executive Officer.  D. DeCristoforo has served as the Company's Vice President of Sales and Marketing.

{6}  Defendant Paul M. Givens ("Givens") serves as Lindy's Vice President and Vice President of Operations and Finance.

{7}  Defendant Pittco Capital Partners III, L.P. ("Pittco") is a Tennessee limited partnership. Pittco Management, LLC ("Big Pittco"), which the Court believes to be Pittco's parent, serves as Pittco's general partner. Big Pittco's two members are J.R. Hyde, III and Pittco Corporate, Inc. Except where otherwise noted, the term "Pittco" refers only to Pittco Capital Partners III, L.P.

{8}  Defendant Andrew Seamons ("Seamons") serves as Pittco's representative on Lindy's Board of Directors. Seamons also chairs Lindy's Special Matters Committee.

{9}  Defendant Leonard Kaye ("Kaye") is a member of Lindy's Board of Directors and its Special Matters Committee.

{10}  Defendants Givens, Seamons, and Kaye are collectively referred to as "the Individual Defendants."

## B. The Lawsuit and the Mediation

{11}  Plaintiffs initiated this action by their Complaint filed on March 19, 2014. The matter was designated a complex business case on March 24, 2014, and reassigned to the undersigned on July 2, 2014.

{12}  Plaintiffs bring individual and derivative claims asserting breach of their employment agreements, with corresponding wage and hour violations, tortious interference with those contracts, and violations of fiduciary duties by the Individual Defendants in connection with their management of the Corporate Defendant. They further claim that V. DeCristoforo was entitled to "put" her shares to Lindy's for redemption.

{13}  The Individual Defendants and the Special Matters Committee, by separate motions, moved to dismiss Plaintiffs' claims. On August 5, 2014, while the motions to dismiss remained in the briefing stage, the Court granted the Special Matters Committee's Motion for Stay to Conduct Mediation, allowing the parties until September 4, 2014, to complete mediation.

{14}   The parties held a mediated settlement conference on September 2, 2014.  The next day, the Court was advised that the parties had "reached an agreement to settle."  (Mot. Enforce Attach. 2.)  The following day, the Court granted the parties' Consent Motion to Extend Stay for additional time "to finalize settlement documents and coordinate the filing of a motion to approve the settlement and dismissal of the derivative claims."  (Consent Mot. Extend Stay 1.)  On October 10, 2014, counsel for Pittco and the Individual Defendants reported to Plaintiffs' counsel that it was his clients' position that no enforceable agreement was reached at mediation.

{15}   On October 16, 2014, Plaintiffs filed the present Motion to Enforce, appending the Mediated Settlement Agreement (Mot. Enforce Attach. 1).

{16}   On November 12, 2014, Plaintiffs contended that all claims had been settled, but if not, that they were entitled to file an Amended Complaint.  They filed both a Motion to Amend and an Amended Complaint they contend they were entitled to file as a matter of right.

{17}   After full briefing, the Court heard argument on the Motion to Enforce and the Motion to Strike on February 13, 2015.  The Motion to Enforce and the Motion to Strike are now ripe for disposition.

### C.  Lindy's Corporate Governance

{18}   Lindy's is governed by the Amended and Restated Limited Liability Company Agreement of Lindy's Homemade, LLC, effective January 1, 2011, as amended (the "LLC Agreement").  As of May 21, 2013, the date of the last amendment to the LLC Agreement, Lindy's members and their respective ownership interests are:

| Member | Ownership Interest (%) | Voting Percentage (%) |
|---|---|---|
| Paul M. Givens ("Givens") | 33.33 | 33.33 |
| Pittco | 25.89 | 25.89 |
| Leonard Kaye ("Kaye") | 2.48 | 2.48 |

| | | |
|---|---|---|
| Joel Kaye | 2.48 | 2.48 |
| Matt Kaye | 2.48 | 2.48 |
| Veronica DeCristoforo | 33.33 | 33.33 |

(Individual Defs.' Br. Opp'n Pls.' Purported Mot. Enforce Settlement Agreement ("Opp'n Br.") Ex. 5 ("Fourth Am. LLC Agreement") Ex. A, Schedule A.)

{19}   The LLC Agreement governs the rights, duties, and obligations of Lindy's members.  It also includes restrictions on the transfer of any member's interest: "Any attempt to Transfer or any purported Transfer of any Membership Interests not in accordance with the terms of this Agreement shall be null and void."  (Opp'n Br. Ex. 1 ("LLC Agreement") § 10.1(a).)  The LLC Agreement allows share transfers only to certain permitted transferees, which includes Lindy's and third parties only after Lindy's is given a right of first refusal and other members do not elect to purchase the shares on same terms offered to the third party.  Lindy's exercise of its right of first refusal constitutes a Major Decision, requiring the written consent of 66% of the unaffected voting shares.[1]

{20}   Lindy's is managed by a Board of Directors comprised of Kaye, Givens, V. DeCristoforo, D. DeCristoforo, and Seamons.  Seamons is not a member of Lindy's nor has he ever signed the LLC Agreement in his individual capacity.

{21}   V. DeCristoforo, D. DeCristoforo, and Givens each had employment contracts as Lindy's officers, each executed on March 20, 2011, with an initial term through December 31, 2011, and automatic annual renewals absent notice of nonrenewal given between January 1 and January 31 in the relevant year.

### D.  The Special Matters Committee

{22}   In late 2012, the DeCristoforos became concerned about Givens' conduct and, after investigation, informed the Board of Directors that they believed Givens had caused Lindy's to improperly compensate an employee as an

---

[1] The requisite voting percentage varies based on the "Major Decision" under consideration.  A decision to issue additional Common Units (essentially, voting shares) only requires the written consent of 58% of the voting shares.  (LLC Agreement § 1.1.)

independent contractor, underreport income of certain Lindy's employees, attempt to include false information on Lindy's 2012 tax return, hire undocumented workers, and ignore claims that one of Lindy's products did not comply with federal regulations. The DeCristoforos also informed the Board of Directors that Givens was verbally abusive to V. DeCristoforo and directed employees to "choose sides" and withhold information about Lindy's business operations from the DeCristoforos. (Compl. ¶¶ 37(f)–(g).)

{23}    The Board of Directors held a meeting on May 21, 2013, at which the DeCristoforos contend that the Individual Defendants improperly demoted them from their prior positions; appointed Givens as COO and CFO; granted Givens more expansive powers; and appointed a Special Matters Committee, comprised of Seamons and Kaye, to investigate the DeCristoforos' complaints. The DeCristoforos contend and the Individual Defendants deny that Seamons and Kaye were not independent directors.

{24}    Bylaws governing the Special Matters Committee grant it

plenary and exclusive authority to (a) decide whether . . . to pursue or otherwise resolve any and all claims . . . made by [the DeCristoforos or Givens] . . .; (b) take any and all actions relative to such claims or potential claims, including . . . (vi) execute . . . for and on behalf of [Lindy's] any and all notices, certificates, agreements, . . . and other documents or instruments and to perform and do or cause to be performed or done any and all such acts or things and to pay or cause to be paid all necessary fees and expenses, in each case in the name and on behalf of [Lindy's] . . . to effectuate or carry out the provisions or the intent and purposes of the foregoing or otherwise perform the functions of the Special Matters Committee.

(Fourth Am. LLC Agreement Ex. D ¶ 4.)  The bylaws also allow the Special Matters Committee to take action without a meeting if a proposed consent that sets forth the action to be taken "(i) is sent to all of the members of the Special Matters Committee, (ii) is signed by all of the members of the Special Matters Committee; and (iii) . . . is included in [Lindy's] permanent records." (Fourth Am. LLC Agreement Ex. D ¶ 5(d).)

## E. Issues Regarding Termination of the DeCristoforos' Employment Contracts

{25} Defendants assert that the DeCristoforos' employment agreements were validly terminated as of December 31, 2013, by virtue of a letter dated January 2, 2014, providing written "notice of nonrenewal." (Am. Compl. Ex. C.) The DeCristoforos claim that their employment contracts automatically renewed on January 1, 2014, and that any attempt to terminate the contracts was ineffective for failure to comply with the contract procedure.

{26} Plaintiffs further claim that the manner of termination entitles V. DeCristoforo to "put" her ownership interest in Lindy's for redemption at fair value. Plaintiffs and Defendants unsuccessfully negotiated Lindy's redemption of her shares, and Plaintiffs now contend that Defendants negotiated in bad faith.

## F. The Mediation

{27} The parties held a mediated settlement conference on September 2, 2014.[2] The following day, counsel for the Individual Defendants and Pittco notified the Court by e-mail that the parties had reached "an agreement to settle." (Mot. Enforce Attach. 2.)[3] The Report of Mediator, utilizing form AOC-DRC-16T—Mediated Settlement Agreement Program – MSC Rule 4.C (the "Mediation Report")—was filed on September 8, 2014. The Mediation Report includes a typewritten preamble reciting that the parties stipulate and agree that "a full and final agreement of all issues was reached," and a copy of the agreement as an

---

[2] The Individual Defendants have asserted in their briefs that the mediation was voluntary, so that the statute governing Mediated Settlement Conferences in superior court actions does not apply. *See* N.C. Gen. Stat. § 7A-38.1 (2014). However, Defendants invoke section 7A-38.1(l)(4), which provides that "[n]o settlement agreement . . . shall be enforceable unless it has been reduced to writing and signed by the parties." *Id.* All parties also requested a stay in order to facilitate the mediation. The Court concludes that the mediated settlement conference was subject to the statute.

[3] The Court has based its decision on the documents executed at the conference and not on the report of counsel to the Court. The Court's decision would be the same if no oral reports had been made to the Court prior to Plaintiffs filing the Motion to Enforce.

attached "Exhibit A."[4] (Mot. Enforce Attach. 1.) The second page of the Mediation Report form reads, "[t]his matter has been settled by consent." (Mot. Enforce Attach. 1.) It includes signatures by V. DeCristoforo, D. DeCristoforo, Todd Capitano (counsel for the DeCristoforos), Kaye, Seamons, Givens, and Robert Marcus (counsel for the Individual Defendants and Pittco). Kaye, Seamons, Givens, and Marcus each signed under the typewritten word "Defendant," (Mot. Enforce Attach. 1.)

{28}    Plaintiffs and Defendants disagree whether the signatures were made by or bound Pittco or Lindy's. No signature or signature line expressly denominates either of them as signatories. Plaintiffs contend that those who signed had the authority and intention to bind them. Defendants disagree.

{29}    In addition, Plaintiffs and Defendants disagree whether final agreement by all necessary parties was reached as to Exhibit A, and further whether Exhibit A, even if agreed to, was a binding agreement containing all essential settlement terms. Specifically, Defendants contend that Kaye signed the Mediation Report and left the mediation before Exhibit A was finalized.

{30}    The record includes various, early iterations of Exhibit A. The finalized Exhibit A begins: "The parties hereby agree to the following terms, contemplating a further statement of their agreement and complete mutual release." (Mot. Enforce Attach. 1, Ex. A.) An earlier version of the Mediation Report read that "[t]he parties hereby agree to the following terms, subject to a formal settlement agreement and release to be agreed to by the parties" (Mot. Enforce Attach. 13), in contrast to the language in the final Mediation Report, which reflected that "a full and final agreement of all issues was reached." (Mot. Enforce Attach. 1.)

{31}    The DeCristoforos, Givens, and Seamons initialed Exhibit A, but Kaye did not, having left the mediation before Exhibit A was finalized. The record is silent as to whether Kaye asked consent of either Plaintiffs or the mediator before

---

[4] The Court attaches the Mediation Report to this Order & Opinion as Exhibit A.

leaving the mediation.  Affidavits reflect that Kaye was present during preparation of earlier iterations of Exhibit A, and he was obviously aware that there was to be an Exhibit A when he signed the Mediation Report.  No counsel initialed Exhibit A.

{32}   The parties' effort to "further state[] their agreement and complete mutual release" was unsuccessful.  (Mot. Enforce Attach. 1, Ex. A.)

## III.   PARTIES' CONTENTIONS

{33}   The major issues center on whether all necessary parties ever reached agreement on essential terms.  Plaintiffs contend that the Mediation Report represents a full, final, and binding settlement, and even though the parties contemplated a fuller settlement agreement carrying out the essential terms does not make the agreement nonbinding.  They further contend that the signatures affixed to the Mediation Report are able to bind all parties, and that subsequent arguments that the settlement could not be implemented pursuant to Lindy's LLC Agreement should be ignored.  Defendants contend (1) that Exhibit A reflected that the parties had yet to agree to essential terms and that a settlement was contingent on agreement to those terms; (2) that, in any event, the agreement required essential signatures that were never provided; and (3) that the settlement cannot be effectuated because the terms of purchase are inconsistent with the transfer restrictions in Lindy's LLC Agreement.

{34}   As to required signatures, Plaintiffs contend that the Individual Defendants each signed, that they individually or collectively had the power to bind Lindy's and Pittco, and that their signatures are effective both individually and as to the corporate entities.

{35}   As to the required purchase of V. DeCristoforo's membership interests, Plaintiffs contend that the language in the Mediation Report indicating that "Defendants agree to purchase" clearly represents a joint undertaking by all Defendants.  (Mot. Enforce Attach. 1, Ex. A ¶ I.)  In addition to contending that they did not agree to such an undertaking, Defendants contend that a purchase by all Defendants would transgress the limitations in the LLC Agreement.  Defendants

counter that all parties understood that Lindy's alone would redeem V. DeCristoforo's interest, which is an acquisition the LLC Agreement permits. Plaintiffs rejoin that the signatories to the Mediation Report have the requisite authority to amend the LLC Agreement as a Major Decision if necessary to effectuate the sale, and that it is clear that all parties understood and agreed that the other Defendants must lend assurances for a purchase that Lindy's alone did not have the financial ability to complete. The Court observes that there are actually two disagreements, although they are addressed collectively by the parties. The first is whether all Defendants must be the purchasers in any sale of V. DeCristoforo's shares. The second is whether Defendants must collectively share financial responsibility for the transaction's accomplishment.

{36}    The arguments regarding these two disagreements involve the construction of particular terms in Exhibit A. One term provides that "Defendants agree that the obligations [to purchase V. DeCristoforo's shares] will be senior to all obligations of Lindy's other than bank debt." (Mot. Enforce Attach. 1, Ex. A ¶ I.) Defendants contend and Plaintiffs deny that this signifies an understanding that Lindy's alone would purchase the shares, so that other Defendants should not bear financial responsibility for the purchase. Another term provides that "Defendants will deliver contemporaneously with the first payment [for V. DeCristoforo's shares] a confession of judgment in the [amounts set forth] to be docketed in the event of a payment default." (Mot. Enforce Attach. 1, Ex. A ¶ I.) Plaintiffs contend and Defendants deny that this language further reflects that each Defendant was to underwrite the financial obligation for the share purchase and that each Defendant must execute a confession of judgment to secure payment of the purchase price.

{37}    The briefing highlights other negotiations which Defendants contend demonstrate the absence of any binding agreement. One negotiation point relates to whether Plaintiffs would receive a guaranty. The negotiations are set forth in the affidavits which are subject to the Motion to Strike. Defendants contend that, during the mediation, the mediator informed Defendants that Plaintiffs requested individual guarantees of the purchase price, and Defendants adamantly refused the

request, after which no further demand for such a guaranty was made. Plaintiffs counter that their demand was only that Big Pittco execute a guaranty of Pittco's obligation. The Court does not believe these negotiations or the dispute between the parties as to what the negotiations entailed are relevant to the question of whether a binding settlement agreement was reached in accord with the terms of the documents that the parties signed. The Court has not considered the affidavits for purposes of interpreting those terms.

{38}    Defendants also assert that the settlement agreement is unenforceable because it includes illusory obligations. Defendants point to the provision stating that "Defendant Pittco Capital Partners III, L.P. will either remove Plaintiffs' guarantees or indemnify Plaintiffs for any liability under the guarantees on all loans and real estate lease. If this condition is not fulfilled, Plaintiffs may elect to waive this condition." (Mot. Enforce Attach. 1, Ex. A ¶ V.) Defendants argue that the effect of this paragraph is to allow Pittco to opt out of performing under the contract and for Plaintiffs to then have the option of withdrawing from the entire settlement agreement at their own election, thereby making all undertakings illusory. Plaintiffs counter that the language does not allow Pittco the option to withdraw from all undertakings but instead only allows the election of whether it would choose to indemnify Plaintiffs or arrange to have their liability as guarantors extinguished, and that the option Plaintiffs reserved was to waive the condition that the guarantees must be extinguished. Therefore, Plaintiffs contend that the overall settlement agreement cannot be fairly characterized as illusory.

{39}    As a further part of their argument that the settlement is illusory, Defendants contend that various federal discrimination statutes implicated by the termination claim would give Plaintiffs the unilateral right to withdraw from the settlement. Significantly, no claims were brought in this action under those various federal anti-discrimination statutes catalogued in the release paragraph of the initial draft settlement agreement prepared after the mediation (Mot. Enforce, Attach. 5, ¶ 4). The mediated settlement agreement did not include the mandatory

statutory language that would be included for an effective release of any such federal claims.

## IV.    STANDARD OF REVIEW

{40}    "[A] party 'may enforce a settlement agreement by filing a voluntary dismissal of its original claim and then instituting another action on the contract, *or it may simply seek to enforce the settlement agreement by petition or motion in the original action.*'"  *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694, 682 S.E.2d 726, 732 (2009) (quoting *State ex rel. Howes v. Ormond Oil & Gas Co.*, 128 N.C. App. 130, 136, 493 S.E.2d 793, 797 (1997)).  Where a party chooses to enforce the settlement agreement by motion in the original action, the summary judgment standard of review applies.  *Id.* at 695, 682 S.E.2d at 733.[5]

{41}    On summary judgment, the trial court asks "whether, on the basis of materials supplied . . . there [is] a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law."  *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).  The moving party must demonstrate that lack of any triable issue of material fact.  *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999).  The materials supplied to the Court in support of or in opposition to the motion to enforce must be viewed in the light most favorable to the nonmoving party.  *Hardin*, 199 N.C. App. at 695, 682 S.E.2d at 733.

---

[5] The Individual Defendants argue that the proper construction of *Hardin* is that Plaintiffs, having sought to enforce the Settlement Agreement by the present motion, must now demonstrate that there is no disputed material fact as to whether the Settlement Agreement is enforceable, and if they cannot, then they cannot further seek recovery on that claim.  That is, if the Court finds that there are disputed material facts regarding whether a binding settlement agreement was reached, the Court must declare that the settlement is unenforceable and Plaintiffs are not entitled further to pursue proof of these disputed facts at a trial.  The Court need not reach this argument but finds it novel and unpersuasive.  The Court notes that the plaintiff in *Hardin* sought to avoid a settlement agreement, not enforce it, and that the *Hardin* court granted the defendants' motion to enforce the settlement.  *Hardin*, 199 N.C. App. at 703, 709, 682 S.E.2d at 737, 741.

## V.    ANALYSIS

### A. <u>The Settlement Agreement Includes All Necessary Signatures</u>

{42}    The issue with which the Court has grappled the most is whether all necessary parties signified their joinder in the settlement by authorized signatures. When signifying a "full and final agreement of all issues," Seamons and Kaye signed the Mediation Report as "Defendant," without express indication whether they were doing so individually, on behalf of corporate entities for whom they were representatives at the mediation, or both.  Seamons initialed Exhibit A.  Kaye did not; however, Kaye signed the covering report with knowledge that Exhibit A was in progress and gave no instructions to withhold his signature pending the final preparation of Exhibit A.  Though Kaye left before Exhibit A was finalized, his counsel remained at the mediation.

{43}    The Court concludes that Seamons had authority to bind Pittco, and Seamons and Kaye collectively had authority to bind Lindy's as the members of Lindy's Special Matters Committee, which was given "plenary and exclusive authority" to agree to a settlement of claims with the DeCristoforos and to execute documents necessary to do so.  Having found such authority, the Court holds that the unqualified signatures bound both the individuals and the corporate entities they represented.  There is no apparent basis to conclude that any other individual represented the corporate entities or that the individuals intended to join the settlement only as individuals when agreeing that there had been "a full and final agreement of all issues," particularly where both Seamons and Kaye knew the settlement committed Lindy's to repurchase the DeCristoforos' shares, and according to their contentions, that Lindy's was to be the sole purchaser.

{44}    In *Mountain Farm Credit Service, ACA v. Purina Mills, Inc.*, the North Carolina Court of Appeals held that,

> when an authorized principal of the company has executed a security
> agreement, the absence of the true business name should not defeat
> the security interest as long as the evidence indicates that the signer
> did in fact intend to bind the entity by the signature.  Of course, the
> individual's signature will not always operate to bind the business

entity. *The individual must have authority to encumber the business property.*

119 N.C. App. 508, 512, 459 S.E.2d 75, 79 (1995) (emphasis added) (quoting James J. White & Robert S. Summers, Uniform Commercial Code § 22-5 (3d ed. 1988)). In that case, the security agreement listed the debtor as two individuals "dba Grey Dawn Farm" instead of "Grey Dawn Farms" and "appear[ed] to be signed in an individual, rather than representative, capacity." *Id.* at 511, 459 S.E.2d at 78. The *Mountain Farm* court determined that there was sufficient evidence that, nevertheless, the signing individual had authority to bind the corporation despite his failure to clearly sign in a representative capacity. *Accord In re Mid-Atl. Piping Prods. of Charlotte, Inc.*, 24 B.R. 314, 319 (Bankr. W.D.N.C. 1982) (finding "no credible evidence that Mr. Keeter's signature on the security agreements was intended as anything other than a signature of the Debtor by its duly authorized officer, even though this was not made explicit by any reference to the Debtor's name . . . near the signature line on the security agreement").

{45}     Defendants contend that Seamons could not have signed for Pittco because he did not have authority to bind it. It is apparent, however, that Pittco had held Seamons out as an agent who was permitted to bind the corporation and had him sign on its behalf in prior transactions with Lindy's. "When a corporate agent acts within the scope of his apparent authority, and the third party has no notice of the limitation on such authority, the corporation will be bound by the acts of the agent . . . ." *Zimmerman v. Hogg & Allen Prof'l Ass'n*, 286 N.C. 24, 30, 209 S.E.2d 795, 799 (1974). A principal's liability is "governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Id.* at 30–31, 209 S.E.2d at 799.

{46}     As one example of Seamon's apparent authority, V. DeCristoforo, Givens, and Pittco were required to consent in order to adopt the third amendment to the LLC Agreement in April of 2012. On the signature page of that document, V.

DeCristoforo's and Givens's signatures appear on lines above their typewritten names. Seamons signed on behalf of Pittco, as its managing partner, as follows:

Pittco Capital Partners III, L.P.

By: _____

Name: Andrew Seamons

Title: Managing Partner

(Opp'n Br. Ex. 4 ("Third Am. LLC Agreement").) As Seamons had the authority and intent to bind Pittco, and because the Mediation Report makes clear that it was "a full and final agreement of all issues" (Mot. Enforce Attach. 1), the Court concludes that Seamons bound himself and Pittco with his signature.

{47} It is clear that Seamons and Kaye had the authority to bind Lindy's as the two members of its Special Matters Committee. Lindy's Special Matters Committee had "plenary and exclusive authority" to settle claims alleged against Lindy's in this lawsuit. (Fourth Am. LLC Agreement Ex. D. § 4.) The Special Matters Committee may take action without a meeting where the proposed action is set forth in a document that "(i) is sent to all of the members of the Special Matters Committee, (ii) is signed by all of the members of the Special Matters Committee, and (iii) . . . is included in the Company's permanent records." (Fourth Am. LLC Agreement Ex. D § 5(d).) Here, both members reviewed and signed the Mediation Report that reflects the final resolution of all issues.

{48} The Court is not persuaded by Defendants' contention that the settlement can be avoided because Kaye left the mediation before initialing the final Exhibit A. Kaye left, knowing that the reduction of the terms to paper on Exhibit A was in progress. His counsel was still present. There is no indication that he instructed that his signature, reflecting a "full and final agreement of all issues," must be withheld until he further assented to Exhibit A. Under these circumstances, Kaye and Lindy's should be bound to the settlement.

{49} Clearly, the issue of whether there were all necessary signatures would have been clarified if Kaye and Seamons had affixed separate individual and

representative signatures.  This is the normal practice in transactional documents. "[W]here individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual."  *Keels v. Turner*, 45 N.C. App. 213, 218, 262 S.E.2d 845, 847 (1980) (quoting 19 Am. Jur. 2d *Corporations* § 1343 (1965)).  This serves to prevent a person from disclaiming individual liability by asserting that he intended to sign only as a representative of a corporation.  *Id.*

{50}     Often, the time pressures of preparing documents at the end of a long and contentious mediation session require drafting a binding document that does not allow for the same formalities as a transaction completed after multiple document exchanges.  That does not mean, however, that a settlement that the attendees represent to be a full and final resolution of all issues should be easily avoided because of the form of signatures.  *Keels* clearly teaches that an individual is bound by his unqualified signature.  It does not teach that a corporation is never bound by an unqualified signature of its authorized agent.  Reading *Keels* with *Mountain Farm Credit Service*, the Court concludes that where an individual has authority and an intent to bind the corporation as to a matter in which he also has an individual interest, and participates in a negotiation both individually and as a corporate representative, his unqualified signature on a document prepared as a result of that negotiation binds both the individual and the corporation he represents.

{51}     The Court concludes that all necessary parties, both the Individual Defendants and the corporate Defendants, joined the Settlement Agreement as indicated by authorized signatures affixed on their behalf signifying that a full and final agreement on all issues was reached.

### B.  <u>There Was a Sufficiently Definite Agreement on a "Mutual Release"</u>

{52}     The covering Mediation Report stipulates that a "full and final agreement of all issues was reached."  It then refers to Exhibit A, which begins, "The parties hereby agree to the following terms, contemplating a further statement

of their agreement and complete mutual release." (Mot. Enforce Attach. 1, Ex A.) The question is whether the agreement became unenforceable when the parties could not reach agreement on the form of final settlement documents containing expansive release language. The record reflects that Defendants sought to include in that release matters to which there is no express reference in the Mediation Report, Exhibit A, or among the claims in the pending litigation, such as Plaintiffs' obligation to return corporate materials upon termination. The proposed release also added language to release federal claims that had not been brought in the litigation. To accomplish the release of such claims, the draft settlement agreement exchanged after the mediation included language to comply with statutory requirements "that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." 29 U.S.C. § 626(f)(1)(G) (2014). Defendants argue that this necessary language renders the agreement illusory.

{53}     "[C]ompromise agreements, such as the mediated settlement agreement reached by the parties in this case, are governed by general principles of contract law." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001)). Settling parties' "minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974).

{54}     The issue of a mutual release was paramount in *Chappell*. There, the North Carolina Supreme Court held that a proposed settlement was not binding and enforceable, based upon an agreement that provided only that "Defendant will pay $ 20,000 within [two] weeks of date of settlement in exchange for voluntary dismissal (with prejudice) and full and complete release, mutually agreeable to both parties." *Chappell*, 353 N.C. at 691, 548 S.E.2d at 499–500 (alteration in original). The Supreme Court held that the express settlement terms contemplated future

agreement to a release form, which never occurred. *Id.* at 693–94, 548 S.E.2d at 500–01.

{55} The Court concludes that the language of the settlement documents at issue here is not conditional and does not fall within *Chappell*'s holding. The language in the Mediation Report is that all parties had reached "a full and final agreement of all issues." That the agreed-upon mutual release would be included in a subsequent document making a "further statement" of the agreement did not render the settlement conditional on the form of a release to be negotiated later.

{56} The Court further concludes that this case is more comparable to the facts before the court in *North Carolina National Bank v. Wallens*, 26 N.C. App. 580, 217 S.E.2d 12 (1975). There, the parties had agreed on a letter which was "to serve as a memorandum agreement until proper complete documents can be drawn up." *Id.* at 582, 217 S.E.2d at 14. The North Carolina Court of Appeals determined that, "it cannot be said that execution of a later agreement was a condition precedent to any contractual rights which might otherwise pertain. Furthermore, reference to a more 'complete' document does not necessarily indicate that material portions of the agreement have been left open for future negotiation." *Id.* at 584, 217 S.E.2d at 15. The court of appeals enforced the settlement, concluding that the parties intended to reach a complete settlement, and that the reference to future negotiation on other terms to be included in a more complete agreement could only concern immaterial additional terms. *Id.*

{57} A clear release of claims, absent proof of a contrary intent, is effective to discharge all claims pending in the litigation. *Hardin*, 199 N.C. App. at 699, 682 S.E.2d at 735 (citing *Sykes v. Keiltex, Indus., Inc.*, 123 N.C. App. 482, 473 S.E.2d 341 (1996)). While a release can include extensive language, such language is not absolutely necessary. Here, the language of the Mediation Report with its appended Exhibit A expresses a clear intent that all issues in the litigation had been fully and fairly resolved. The language was effective to release pending claims even if the parties did not later execute a more comprehensive statement of the releases. Upon satisfaction of the settlement terms, Plaintiffs will be obligated to

or the Court may dismiss Plaintiffs' claims in the litigation with prejudice, which will have the same binding effect as a release.

{58}   The parties' full resolution of claims brought in this action is not avoided because the stated mediation terms signed by the parties did not include statutory language that may be required to release federal claims that were not brought in this action. In reaching this conclusion, the Court need not consider in the first instance whether Plaintiffs have or had any valid federal claims.

{59}   In sum, the Court concludes that there was a sufficiently definite mutual agreement that claims presented in the litigation were released upon execution of the Mediation Report with the appended Exhibit A. The parties may, but are not required to, execute a more comprehensive statement of the release terms to effectuate the release.

C. <u>The Defendants Are Required to Assure the Purchase of V. DeCristoforo's Shares, but The Purchase May Be Structured with Lindy's as Sole Purchaser at Defendants' Election, and Plaintiffs Are Entitled to But One Confession of Judgment</u>

{60}   Exhibit A to the Mediation Report provides that "Defendants agree to purchase Mrs. DeCristoforos [sic] membership interest in Lindy's with [four] payment[s]." (Mot Enforce Attach. 1, Ex. A ¶ I (listing payment dates and amounts).) At the time of the first payment, Defendants are to deliver "a confession of judgment" in the amount of the payment obligations. Defendants contend that no enforceable agreement was reached because (1) extrinsic evidence shows that the parties only intended to obligate Lindy's, not other Defendants, to purchase the shares, and (2) the agreement is inconsistent with the LLC Agreement, which allows a sale to Lindy's but prohibits a sale to "all Defendants." Plaintiffs counter that Defendants must be bound to Exhibit A's unambiguous language and that, if necessary, the signatories to the Settlement Agreement collectively have adequate authority to amend Lindy's LLC Agreement to allow the purchase to be completed.

{61}   Exhibit A's language is sufficiently definite to be enforceable. The Court finds that Defendants collectively are financially responsible for the

completion of the purchase of the shares.  Defendants are not, however, required to be the actual purchasers but rather, at their election, Lindy's alone can complete the purchase.  The Court further finds that Plaintiffs are entitled only to a single confession of judgment, executed by a single Defendant of Defendants' election.

{62}    There is no provision in the settlement documents directly or indirectly precluding Defendants from assigning their right of purchase.  *See Parkersmith Props. v. Johnson*, 136 N.C. App. 626, 631, 525 S.E.2d 491, 494 (2000) ("Generally, contracts are freely assignable unless prohibited by statute, public policy, or the terms of the contract.").  Defendants are then free to structure the purchase with Lindy's as the sole purchaser. [6]

{63}    While Defendants collectively have contractual obligations to assure the purchase and payment of the purchase price, they are not each required to provide a confession of judgment.  The settlement documents require Defendants to submit "*a* confession of judgment." (Mot. Enforce. Attach. 1, Ex. A ¶ I (emphasis added).)   Exhibit A's language is not sufficiently broad to require that each Defendant separately submit a confession of judgment.  Defendants will satisfy the settlement requirements by submitting a single confession of judgment executed by one of the Defendants of the Defendants' choosing.  The Court's holding does not excuse other Defendants from their contractual obligations but recognizes that Plaintiffs are not entitled to secure those contractual obligations by a confession of judgment from each Defendant.

---

[6] The Court's ruling obviates the need to consider whether the signatories collectively had the ability to authorize and actually authorized a Major Decision to amend Lindy's LLC Agreement.  *See* LLC Agreement §§ 1.1 (defining "Super Voting Majority" and "Major Decision"), 3.1(a); Fourth Am. LLC Agreement Ex. A Schedule A (noting signatories to Mediation Report collectively had 95.03% of Lindy's voting shares).)  *See also In re Asian Yard Partners*, Nos. 95-333-PJW, 95-334-PJW, 1995 Bankr. LEXIS 2199, *33 (Bankr. D. Del. Sept. 18, 1995) (providing that, although "[t]he Settlement Agreement was not cast in terms of an amendment to the Partnership Agreement, . . . *it is clear from [the parties'] conduct in executing the Settlement Agreement that they must be deemed to have impliedly amended the Partnership Agreement*" (emphasis added)).

**D. The Settlement Is Not Rendered Illusory by Plaintiffs' Option to Waive One of Pittco's Performance Obligations**

{64} Exhibit A provides that "Defendant Pittco Capital Partners III, L.P. will either remove Plaintiffs' guarantees or indemnify Plaintiffs for any liability under the guaranties on all loans and real estate lease. If this condition is not fulfilled, Plaintiffs may elect to waive this condition." (Mot. Enforce Attach. 1, Ex. A ¶ V.) Defendants contend that this language gives Plaintiffs the unilateral option to withdraw from the entire agreement rendering their commitment illusory. The Court disagrees.

{65} The Court concludes that the language, although not a model of clarity, grants Plaintiffs the option to relieve Pittco of its obligation to remove guarantees but does not allow Plaintiffs to withdraw from the settlement entirely. Pittco has the option of either removing Plaintiffs from guarantees or indemnifying them from guarantees, but it does not have the option to scuttle the entire settlement by doing neither. Plaintiffs' ability to waive its right to enforce Pittco's obligations does not render the agreement unenforceable. *See, e.g.*, *Phoenix Ltd. P'ship of Raleigh v. Simpson*, 201 N.C. App. 493, 688 S.E.2d 717 (2009) (enforcing other contract provisions after determining that the defendants waived another provision); *Ball v. Maynard*, 184 N.C. App. 99, 102, 645 S.E.2d 890, 893 (2007) ("[T]he parties may waive or excuse non-occurrence of or delay in the performance of a contractual duty." (alteration in original) (quoting *Dishner Developers, Inc. v. Brown*, 145 N.C. App. 375, 378, 549 S.E.2d 904, 906 (2001))).

## VI. CONCLUSION

{66} The settlement the Court is enforcing includes derivative claims. The Court approves the settlement pursuant to section 57D-8-04 of the North Carolina General Statutes, finding that all parties substantially affected by the settlement have been notified of the settlement and Plaintiffs' Motion to Enforce it..

{67} The Court concludes that the parties reached a full and final agreement on all issues in this litigation, the settlement of claims pending in the

litigation is final and enforceable, and Plaintiffs' Verified Motion to Enforce Settlement Agreement is GRANTED.

{68} Plaintiffs' Motion to Strike is DENIED AS MOOT, as the Court did not consider the affidavits for purposes of interpreting the terms of the settlement.

{69} The Court believes that this Order & Opinion has addressed and resolves all outstanding claims and issues in the litigation, so that final judgment is appropriate. However, the Court will defer entry of final judgment until June 5, 2015, solely to allow the parties to suggest to the Court that there are issues that are not resolved by this Order & Opinion.

IT IS SO ORDERED, this the 29th day of May, 2015.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases

STATE OF NORTH CAROLINA

MECKlenburg County

File No. 14 CVS 4877

In The General Court of Justice
Superior Court Division

Name of Plaintiff(s)

Veronica Decristoforo et al

VERSUS

Name of Defendant(s)

Paul M. Givens, et al

MEDIATED SETTLEMENT AGREEMENT
MSC PROGRAM
MSC Rule 4.C

The parties stipulate and agree that at the Mediated Settlement conference held on Sept. 2, 2014, 20___, in Mecklenburg County, North Carolina, a full and final agreement of all issues was reached. The terms of the agreement are:

As set forth on the attached Exhibit A

AOC-DRC-16T

☒ This matter has been settled by consent. ~~A Consent Judgment/Order shall be prepared by the~~ ~~attorney for the ☐ Plaintiff(s), ☐ Defendant(s).~~

☒ Except as otherwise provided, each of the parties shall bear his/her/their own attorney fees, costs, and pro rata share of costs of this Mediated Settlement Conference.

*This form is not recommended for use in a mediated settlement conference in which there is a pro se litigant. The mediation summary is recommended (DRC Form _____ ) for use in cases in which there is a pro se litigant.*

| Plaintiff | Defendant |
|---|---|
| *(signature)* | *(signature)* |
| Plaintiff  Veronica *(signature)* | Defendant  *(signature)* |
| Plaintiff | Defendant  *(signature)* |
| Attorney for Plaintiff  *(signature)* Attorney | Attorney for Defendant  Robert *(signature)* |

For Plaintiffs

AOC-DRC-16T

## Exhibit A

The parties hereby agree to the following terms, contemplating a further statement of their agreement and complete mutual release:

I.      Defendants agree to purchase Mrs. DeCristoforos' membership interest in Lindy's with payments as follows:

      A.      $600,000 in 30 days from today
      B.      $400,000 in 1 year from today
      C.      $300,000 in 2 years from today
      D.      $300,000 in 3 years from today

The transfer of Mrs. DeCristoforos' membership interest is effective upon the first payment of $600,000 as set forth above.

Defendants agree that the obligations above will be senior to all obligations of Lindy's other than bank debt, and that no distributions to the members, other than tax distributions, will be made by Lindy's until the final payment listed above.

Defendants will deliver contemporaneously with the first payment as set forth above a confession of judgment in the above amounts to be docketed in the event of a payment default.

II.     Plaintiffs' non-compete agreements will remain in full force and effect through December 31, 2015.

III.    Lindy's is entitled to continue using current packaging, including names and images, until April 1, 2015.

IV.     Plaintiffs agree not to use, license, or otherwise allow anyone else to use the Lindy's image on any competing product until after all payments are made or until there is a default on the payments.

V.      Defendant Pittco Capital Partners III, L.P. will either remove Plaintiffs' guarantees or indemnify Plaintiffs for any liability under the guaranties on all loans and real estate lease. If this condition is not fulfilled, Plaintiffs may elect to waive this condition.

VI.     Plaintiffs will dismiss their claims, with prejudice, within two weeks of the first payment of $600,000 being made as set forth above.